**PUBLISHED**

Present:    Chief Judge Decker, Judges Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton,
                 Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins and Frucci
Argued at Richmond, Virginia


RASHEEM WATTS

                                                                                          OPINION BY
v.        Record No. 1132-22-1                                       JUDGE VERNIDA R. CHANEY
                                                                                   NOVEMBER 6, 2024
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
L. Wayne Farmer, Judge

Kelsey Bulger, Deputy Appellate Counsel (Virginia Indigent
Defense Commission, on briefs), for appellant.

Justin Hill, Assistant Attorney General (Jason S. Miyares, Attorney
General, on brief), for appellee.


        A circuit court speaks only through its written orders as determined by the express language

of the order.  The court may not interpret a written order to include a condition that the order does

not contain, nor may it give independent effect to an oral instruction not incorporated into a written

order.

        The Circuit Court of the City of Suffolk revoked Rasheem Watts's probation and suspended

sentence on a malicious wounding conviction and sentenced him to three years of active

incarceration.  The court found that Watts had violated non-technical special conditions of probation

by failing to follow his probation officer's "special instructions" for gang members, a requirement

that was never incorporated into the court's written sentencing orders.  The Commonwealth urges

us to defer to the circuit court's interpretation of the written orders to include the special

gang-related probation conditions, arguing that the interpretation was reasonable.

For the reasons stated below, we find that the circuit court did not interpret its own order to include written gang-related prohibitions.  Nor do we find that such an interpretation would be reasonable.  As such, this Court reverses the circuit court's judgment and remands for resentencing.

We would further hold that the gang-related conditions are the instruction of Watts's probation officer and are technical conditions of his probation.  We disagree and dissent from Judge Raphael's concurrence instructing the circuit court on remand to consider whether the 2021 order should be amended nunc pro tunc under Code § 8.01-428(B) to incorporate a gang association special condition of probation because Code § 8.01-428(B) does not enable the circuit court to reassume jurisdiction over the sentencing order to insert the -gang-related- condition as a non-technical condition of Watts's probation.  Under these circumstances, we would have our Court reverse the circuit court's judgment, vacate the revocation sentencing order, and remand for resentencing subject to the limitations in Code § 19.2-306.1(C).[1]

BACKGROUND

I.  Circuit Court Proceedings

A.  *Original Conviction and Sentencing*

In May 2016, the circuit court convicted Watts of malicious wounding and firearm possession by a convicted felon.  On the malicious wounding conviction, the court sentenced Watts to incarceration for six years with four years and six months suspended.  On the firearm conviction, the court sentenced Watts to incarceration for five years with three years suspended.  The court conditioned both suspended sentences on five years of supervised probation.  The sentencing orders also provided, as a condition of the suspended sentences and probation, that

---

[1] Circuit Court Case No. CR16000356-02.

"[t]he defendant shall comply with all the rules and requirements set by the probation officer. . . . The defendant shall have no contact with the victim, [E.W.], or his family members."

B. *Watts's First Probation Revocation*

Watts began probation in March 2019 under the supervision of Special Probation Officer Kathy Dunlow (SPO Dunlow). In January 2020, SPO Dunlow issued a major violation report alleging that Watts (1) violated Probation Condition 6[2] requiring Watts to "follow the Probation and Parole Officer's instructions and . . . be truthful, cooperative, and report as instructed" and (2) violated Probation Condition 8 prohibiting him from "unlawfully us[ing], possess[ing], or distribut[ing] controlled substances or related paraphernalia." As to the alleged violation of Condition 6, the report stated that on March 5, 2019, SPO Dunlow had directed Watts to sign a document entitled "Specialized Instruction for Validated Gang Members" (2019 special gang document), which imposed special gang-related conditions of probation. The report alleged that Watts had violated two of the conditions enumerated in the document by continuing to associate with known gang members and posting social media content indicating his gang affiliation. The report also alleged that Watts had violated Condition 8 by testing positive for marijuana on several occasions in 2019.

At a probation violation hearing on September 8, 2021, the circuit court found Watts in violation of the terms and conditions of his probation and revoked Watts's probation and suspended sentences. The court issued written revocation sentencing orders dated September 14, 2021 (2021 revocation sentencing orders). The circuit court imposed the previously suspended sentence on the malicious wounding conviction and re-suspended four years and six months. On the firearm conviction, the circuit court imposed the previously suspended sentence and

_____

[2] Probation Conditions 4, 6, and 8 originate from Form PPS 2 Conditions of Supervised Probation which is issued by the Virginia Department of Corrections and routinely given to probationers. This form was not incorporated into the 2021 revocation sentencing orders.

- 3 -

re-suspended two years and six months. On both sentences, the court conditioned the suspended sentences on supervised probation for five years "under the same terms and conditions as previously ordered." The 2021 revocation sentencing orders also provided, as a condition of the suspended sentences and probation, that "[t]he defendant must comply with all the rules and requirements set by the probation officer. Probation may include substance abuse counseling and/or testing as deemed necessary by the Probation Officer." The orders contained no express language imposing gang-related prohibitions.

During the September 2021 revocation hearing, the circuit court made the following oral pronouncement from the bench:

> I also specifically incorporate as a special condition of your probation all the gang-related prohibitions that were in previous violation on your previous order that probation and parole puts on you. And so there's no confusion this is a special condition of probation. All those conditions that they put on you are going to be part and parcel of the order as a special condition of probation.

However, this oral pronouncement was never incorporated into the 2021 revocation sentencing orders. The written orders contained no language expressly incorporating the court's oral instruction to comply with the special gang-related probation conditions or the transcript of the September 2021 revocation hearing memorializing the ruling. The written orders also did not contain any language expressly incorporating the 2019 special gang document that Watts had signed, nor was this document entered into the record of the 2021 revocation proceedings.

C. *Watts's Second Probation Revocation*

After Watts served his first probation revocation sentence, he returned to supervised probation in January 2022. On January 18, 2022, at the direction of SPO Dunlow, Watts signed a document entitled "Special Instructions—Confirmed Gang/STG Members" (2022 special gang document). The form identified Watts as a member of "Rollin 40's Gang/STG" and instructed Watts as follows:

> You have been placed on Supervision by the Virginia Parole Board and/or the Circuit Court. *Pursuant to Condition 6* of your Conditions of Supervision, having been confirmed as a gang/STG member, *you are now being directed to comply with the following instruction(s) as a requirement of your probation*.

(Emphases added). Watts's signature at the bottom of the form follows a list of "special instructions" and a statement "acknowledg[ing] receipt of the instruction(s) and agree[ing] to comply with the instruction(s)." SPO Dunlow also signed the form.

On May 17, 2022, SPO Dunlow filed a major violation report alleging that Watts had committed a second violation of probation. The report alleged that Watts (1) violated Probation Condition 4—requiring Watts to report to probation "within three working days of [his] release from incarceration, and as otherwise instructed thereafter"—and (2) violated Probation Condition 6—requiring Watts to "follow the Probation and Parole Officer's instructions and . . . be truthful, cooperative, and report as instructed."

The report alleged that Watts violated Condition 4 by failing to report for three scheduled appointments with his probation officer and violated Condition 6 by failing to follow two of the special gang-related probation conditions enumerated in the 2022 special gang document. Specifically, the report stated that Watts had violated the conditions by having repeated phone contact with multiple incarcerated gang members and posting writings, photos, and a video on social media showing his gang involvement.

On July 8, 2022, the circuit court[3] held a hearing on the probation violations alleged in the May 2022 violation report. At this proceeding, the circuit court read a portion of its prior September 2021 oral ruling into the record as evidence for the court to consider but took no

---

[3] Judge L. Wayne Farmer presided over Watts's 2022 revocation hearing. Judge Robert H. Sandwich, who presided over the 2021 revocation hearing, made the oral pronouncement from the bench, and also drafted the 2021 revocation sentencing orders which Judge Farmer later interpreted. For the sake of consistency, we refer to both judges as "the circuit court."

action to modify the 2021 revocation sentencing orders to incorporate the oral pronouncement. The court also entered the 2022 special gang document into the record as a trial exhibit but did not enter the previous 2019 special gang document into the record or modify the 2021 sentencing orders to expressly incorporate this document.

Watts did not contest the alleged probation violations or the evidence set forth in the May 2022 violation report. By counsel, Watts stipulated to his commission of the alleged violations of Conditions 4 and 6 and noted that the alleged violations were not special condition violations but were technical violations under Code § 19.2-306.1. The circuit court responded, "Correct." Based on Watts's stipulations and the contents of the May 2022 violation report, the circuit court found Watts in violation of the terms and conditions of probation.

The circuit court then stated that the question regarding sentencing was whether the circuit court's prior oral ruling made the "gang-related prohibitions" "part and parcel of the order as a special condition of probation." Here, the court reviewed the 2021 revocation sentencing orders and noted that "there is no language in that order" referring to "special conditions" or "gang conditions."

The court agreed that the September 2021 oral ruling imposing the special gang-related probation conditions was not incorporated into the 2021 revocation sentencing orders, stating that "it didn't find its way into the order. It didn't. It's not there." Nevertheless, the court found that the oral ruling imposed enforceable probation conditions without a written court order, stating, "I don't think [the oral ruling] has to be in the order" and that Watts had "violated the oral order that . . . [the circuit court] intended to enter."

The court also found that Watts had violated the written sentencing orders because it found that the sentence in the order directing Watts to "comply with all the rules and requirements set by the probation officer" referred to special gang-related probation conditions.

- 6 -

The court stated, "He has violated the order, the written order that was entered because it says he is supposed to follow all instructions of probation, and that included special gang instructions." Based on these findings, the circuit court concluded that Watts's probation violation was not a technical violation subject to the sentencing limitations in Code § 19.2-306.1. The court stated, "His violation of the special instructions for confirmed gang members is not a technical violation as set forth in the statute." The court, therefore, found that "the fourteen-day limit does not apply" and that "the appropriate guidelines are the ones that call for zero to six months of active time."

The circuit court revoked Watts's four-year suspended sentence on the malicious wounding conviction and imposed a sentence of incarceration for four years, with one year suspended. Watts then timely appealed the circuit court's judgment.

II. Appellate Proceedings and En Banc Petition

On appeal, a split three-judge panel of this Court reversed the circuit court's judgment. The panel majority found that the 2021 revocation sentencing orders did not incorporate any gang-related prohibitions. In so finding, we noted that the circuit court had interpreted the written sentencing orders to exclude the oral ruling. We also held that the circuit court had erred in finding that the oral ruling had imposed enforceable probation conditions independently of a written court order.

Because we found that Watts's violation of the special gang-related probation conditions was a failure to follow the instructions of the probation officer rather than a direct court order, we held that the violation was technical in character and subject to the sentencing limitations in Code § 19.2-306.1(C). We consequently reversed the circuit court's judgment, vacated the

revocation sentencing order,[4] and remanded to the circuit court for resentencing in accordance with our opinion and Code § 19.2-306.1(C).

On April 2, 2024, the Commonwealth filed a petition requesting that this Court set aside the panel's judgment and grant a rehearing of the case en banc. On April 23, 2024, this Court granted the Commonwealth's petition pursuant to Rule 5A:35, reinstated the appeal of the issues raised in the petition, and stayed the panel's judgment pending a rehearing en banc. The full Court heard this case on July 30, 2024.

ANALYSIS

On appellate review of the circuit court's revocation of a defendant's probation and suspended sentence, "[t]he evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013). "[T]he trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Id.* (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). A "[circuit] court by definition abuses its discretion when it makes an error of law." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (alteration in original). "To the extent that appellant's assignment of error raises a question of statutory interpretation, that question is reviewed *de novo* on appeal." *Jacobs*, 61 Va. App. at 535. But we give deference to the circuit court's interpretation of its own orders, if reasonable. *See Hodgins v. Commonwealth*, 61 Va. App. 102, 108 (2012); *Roe v. Commonwealth*, 271 Va. 453, 457-58 (2006). "We apply an abuse of discretion standard in determining whether the circuit court's interpretation of its order is reasonable." *Roe*, 271 Va. at 458.

---

[4] In Circuit Court Case No. CR16000356-02, the court sentenced Watts to a term of four years with one year suspended.

In its petition for rehearing en banc, the Commonwealth argued that the panel erred by not deferring to the circuit court's reasonable interpretation of the 2021 revocation sentencing orders to include the special gang-related probation conditions. We find that the special conditions were not incorporated into the written orders and that Watts's violation of the conditions was a technical violation under Code § 19.2-306.1. Because we would find that the absence of the gang-related prohibitions from the written orders did not result from an inadvertent clerical mistake or oversight, we would further hold that Code § 8.01-428(B) does not permit the circuit court to correct the omission.

Accordingly, this Court reverses the circuit court's judgment, vacates the revocation sentencing order,[5] and remands to the circuit court for resentencing. We would further decline to grant the circuit court leave to modify its order and instead direct the circuit court to resentence Watts consistent with this opinion and in accordance with Code § 19.2-306.1(C).

I. The circuit court did not reasonably interpret the 2021 revocation sentencing orders to include the special gang-related probation conditions.

A. *The circuit court did not interpret the written orders to incorporate the 2021 oral ruling.*

The Commonwealth argues that the circuit court reasonably interpreted the 2021 revocation sentencing orders to include the court's 2021 oral ruling imposing gang-related prohibitions on Watts. On the contrary, the record shows that the circuit court interpreted the written orders and concluded that they did not contain the oral ruling. The circuit court's statements in the record reflect that the court agreed with Watts that the oral ruling had never been incorporated into the

---

[5] Circuit Court Case No. CR16000356-02.

written sentencing orders at all but ruled nevertheless that it imposed a probation condition that could be given effect independently of the written orders.[6]

In reviewing the language of the 2021 revocation sentencing orders, the circuit court noted that they contained no words expressly communicating "special conditions" or "gang conditions." The circuit court openly admitted that the oral pronouncement "did not make its way into the order. It didn't. It's not there." In spite of this, the circuit court opined that the oral instruction did not "need to be in the order" to impose an enforceable probation condition. The court stated that the oral pronouncement expressed a clear intention on the part of the court to impose the special gang-related probation conditions and concluded that Watts had "violated the oral order that . . . [the court] intended to enter."

As the circuit court acknowledged, the written orders contained no language expressly incorporating the 2021 oral pronouncement. The language of the orders contained no reference to either the oral instruction on its own or to the transcript of the September 2021 revocation hearing where the oral ruling was made. The circuit court's finding that the oral pronouncement may be given effect without a written court order contravenes "the firmly established law of this Commonwealth that a trial court speaks only through its written orders." *Walton v. Commonwealth*, 256 Va. 85, 94 (1998) (quoting *Davis v. Mullins*, 251 Va. 141, 148 (1996)). Additionally, "[t]he subjective intentions of a judge upon entering a written order cannot change its character or legal

---

[6] The Commonwealth argued that the circuit court had identified two "textual anchors" in the sentencing orders that incorporated the oral instruction. First, the Commonwealth argued that the sentence directing Watts to continue probation "under the same terms and conditions as previously ordered" incorporated the oral ruling. Second, the Commonwealth contended that the sentence requiring Watts to comply with "all rules and requirements set by the probation officer" also incorporated the ruling.

Because we find that the circuit court did not interpret the orders to include the oral ruling at all, we will not address these arguments. *See Taylor v. Commonwealth*, 78 Va. App. 147, 157 (2023) (holding that the "doctrine of judicial restraint dictates that we decide cases on the . . . narrowest grounds available").

efficacy." *Dir. of the Dep't of Corr. v. Kozich*, 290 Va. 502, 511 (2015). Because the record shows that the circuit court interpreted the written sentencing orders to exclude the oral pronouncement, we find that this ruling was not part of the written orders and did not impose an enforceable probation condition.

B. *The circuit court's interpretation of the written orders to incorporate the special gang-related probation conditions was unreasonable.*

After agreeing that the oral ruling was not incorporated into the 2021 revocation sentencing orders, the circuit court stated that Watts had nevertheless violated the written orders because it found that the directive in the orders to "comply with all rules and requirements set by the probation officer" incorporated the special gang-related probation conditions. We hold that the court's finding was an unreasonable interpretation of the written orders and, therefore, will not defer to the court's interpretation.

"Although trial courts have discretion to interpret their own orders, that discretion must be exercised reasonably and not arbitrarily or capriciously." *Smoot v. Commonwealth*, 37 Va. App. 495, 500 (2002) (citing *Rusty's Welding Serv. v. Gibson*, 29 Va. App. 119, 130 (1999)). "Furthermore, an order must be interpreted within its four corners." *Id.* (citing *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)).

An incorporation by reference of one document into another "must be clear, full, and definite and must be expressly done." *United States v. Stevenson*, 832 F.3d 412, 425 (3d Cir. 2016) (quoting 11A Cyc. of Fed. Proc. § 42:105 (3d ed.)). "To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where the material is found in the various documents." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

Virginia courts have regularly demonstrated this principle. In *Fredericksburg Construction Co. v. J.W. Wyne Excavating, Inc.*, 260 Va. 137, 144 (2000), for example, the Virginia Supreme

Court held that a circuit court had effectively incorporated a motion to withdraw into the court's order granting the motion because the order contained language specifically referencing the "motion to withdraw." Similarly, this Court found in *Heiderscheidt v. Commonwealth*, No. 1298-08-4, slip op. at 2, 5-6, 2009 Va. App. LEXIS 256, at *2-3, *7 (June 9, 2009),[7] that a circuit court had effectively incorporated the court's standing order imposing additional terms and conditions of probation into its sentencing order by directing the defendant to "comply with all of the terms and conditions of probation as set forth in the order of this Court entered on June 22, 1995, in Miscellaneous Order Book 5, page 1769."

The out-of-state cases cited in Judge Fulton's dissent do not stand for the contrary proposition. *See infra* at 41 (citing *State ex re. Moore v. Munchmeyer*, 197 S.E.2d 648 (W. Va. 1973), and *Beecher v. Foster*, 66 S.E. 643 (W. Va. 1907)). In *Munchmeyer*, the appellant challenged the juvenile court's order because the order failed to contain an adjudication that the infants were neglected. 197 S.E.2d at 651. The written order awarded custody of the children to the Department of Welfare and contained statements regarding the Department's authority to deal with the infants but failed to include that the infants were neglected. *Id.* ("Having rendered its opinion upon the matters of law and fact, which opinion in writing is ORDERED filed, does further ADJUDGE and ORDER that the custody of the children named in the petition be, and the same is hereby, awarded to the [Department of Welfare] . . . ."). However, the court's opinion, "*incorporated in the order by reference*," highlighted the neglect element. *Id.* (emphasis added). The court found that the judge's opinion, delivered at the time of the order, may be considered to explain the meaning of ambiguous or equivocal terms or language in the order. *Id.* at 653. The

---

[7] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 568 n.7 (2018) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); *see also* Rule 5A:1(f).

court held that a judgment is "sufficient although it does not contain specific adjudicatory language, *if adjudicatory language is found in the opinion which is made part of the record by order.*" *Id.* (emphasis added).

This case is readily distinguishable from *Munchmeyer* because the circuit court's oral opinion was made part of the record by written order. Specifically, the West Virginia court highlighted the fact that the court's opinion was incorporated by reference—"Having rendered its opinion upon the matters of law and fact which opinion in writing is ORDERED . . . ." *Id.* at 651. Contrast that with this case—where the written sentencing order does not incorporate any oral rulings by reference. In construing a decree, a reviewing court will look to the intent of the issuing court, and sometimes provisions may accordingly be implied. The decree will be construed and restricted in accordance with the pleadings and even with reference to other parts of the record. The omission of any explicit language indicating the inclusion of the oral order cannot be read in concert with the record to include such provisions because it looks outside the four corners of the order to come to such a conclusion.

Similarly, in *Beecher*, the issue was whether a lower court followed a mandate and opinion of the Supreme Court of Appeals in a former appeal. That case involved a dispute over a mortgage on a property in Ohio. 66 S.E. at 643-45. On appeal, the court was required to determine what matters were actually adjudicated on the former appeal. *Id.* at 645. The court, in determining the issue, needed to construe the language of the mandate and the opinion of the court to address the matter in controversy. *Id.* This was because the mandate did not specify an amount in controversy. This differs from the current issue because the current case seeks to impose an additional term as a non-technical violation, which carries different sentencing guidelines than a technical violation.

These cases are distinct from this case because they deal specifically with civil matters, whereas the implication from the lower court's decision here directly affects an individual's liberty.

Additionally, even though there was a serious deprivation of a constitutional right, the distinction from *Munchmeyer* still holds because the parties were at least on notice that they would be litigating the issue. Here, the court unilaterally decided that the probation officer's instructions for gang-related conditions were inapplicable and instead relied on the court's oral opinion in finding that it was a "special condition" of Watts's probation. In turn, this decision changed a 14-day incarceration to 3 years. Criminal sentencing needs to be examined with more scrutiny because the decision could deprive an individual of their freedom. Applying the reasoning in these out-of-state civil cases to a criminal sentencing is setting a dangerous precedent. Therefore, sentencing orders should be narrowly construed within the four corners of a written order to disallow additional terms from being included in sentencing decisions.

Here, the circuit court suggested that the 2021 revocation sentencing orders incorporated by reference the 2019 special gang document that Watts had signed at his probation officer's direction. The court stated that Watts had violated the written court orders "because it says he is supposed to follow all instructions of probation and that included special gang instructions." However, the directive in the order to "comply with all the rules and requirements set by the probation officer" does not specifically refer to the 2019 special gang document, identify or name the document with particularity, or point to the location where the document could be found.

The evidence shows that no document containing special gang-related probation conditions existed in the record at the time the circuit court issued the 2021 revocation sentencing orders. Although Watts had received and signed the 2019 special gang document before the 2021 revocation hearing, that document was never entered into the record of the proceedings. The only

reference to the document in the record is the description of the form in the January 2020 violation report. Additionally, the 2022 special gang document was not entered into the record until the second revocation hearing in July 2022. It does not appear from the record that the special gang document was before the circuit court at the time the court issued the September 2021 orders. There is, therefore, insufficient evidence supporting the notion that this document could have been incorporated by reference into those orders.

Nor can the court reasonably interpret the orders' directive to "comply with all the rules and requirements set by the probation officer" to expressly order compliance with special gang-related probation conditions. While courts may look outside the four corners of a written order to interpret an ambiguous finding contained therein,[8] they may not inject substantive meaning into the order that it does not contain. Here, the circuit court's attempt to interpret an absent requirement into the written sentencing orders goes beyond reasonable interpretation and amounts to rewriting the orders. The express language of the sentencing orders contains no gang-related prohibitions. Therefore, we will not defer to the circuit court's interpretation of the orders to include this probation condition. As our colleagues who concur in this Court's holding to reverse note, it "would have been an abuse of discretion here for the trial court to interpret the 2021 order to incorporate the gang-related association prohibition as a special condition." *Infra* at 30.

---

[8] The Commonwealth relies on this Court's holdings in *Anonymous B. v. Anonymous C.*, 51 Va. App. 657 (2008), and *Cellucci v. Commonwealth*, 77 Va. App. 36 (2023) (en banc), to argue that the circuit court may interpret an absent condition into a written order when the interpretation does not conflict with the record. But those cases are distinguishable. In *Anonymous B.*, our Court held that a circuit court may look to statements from the bench to interpret a finding in a written order that was internally ambiguous. 51 Va. App. at 672. Likewise, in *Cellucci*, we held that a circuit court may use a letter opinion to explain the court's rationale behind a finding in the written order that the defendant had "failed to prove any circumstance in mitigation of his offense." 77 Va. App. at 52-53.

Here, the circuit court did not merely look to the record for additional context to interpret an ambiguous finding or to explain the rationale through which the court arrived at a finding. Rather, it interpreted the order to impose a requirement not contained in the express language of the written order.

II. Code § 8.01-428(B) does not allow the trial court to retroactively insert a probation condition into a sentencing order.

We dissent from Judge Raphael's concurrence regarding instructions to the trial court on remand to consider whether the 2021 order should be amended nunc pro tunc under Code § 8.01-428(B) to incorporate a gang association special condition of probation. The presumption that a circuit court speaks only through its written orders can be rebutted by a record showing that a written order contains a clerical mistake or error due to oversight or inadvertent omission. Code § 8.01-428(B) permits the circuit court to correct such errors:

> Clerical mistakes. Clerical mistakes in all judgments or other parts of the record and errors therein arising *from oversight or from an inadvertent omission* may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected *with leave of the appellate court*.

(Emphases added). But a circuit court only has the power to correct the record under Code § 8.01-428(B) "when the record clearly supports such corrections." *Sch. Bd. of Lynchburg v. Caudill Rowlett Scott*, 237 Va. 550, 555 (1989). Once an appeal is docketed, a circuit court may modify an order pursuant to the statute only if given leave to do so by the appellate court. *See* Code § 8.01-428(B). The appellate court may grant such leave sua sponte or at the request of a party. At no time did the Commonwealth formally request leave to modify, either at the circuit court or this Court, the 2021 revocation sentencing orders pursuant to Code § 8.01-428(B). However, during the en banc oral argument, members of this Court expressed a desire to extend a sua sponte invitation to grant the circuit court leave to modify the orders under Code § 8.01-428(B). For the reasons stated below, we decline such an invitation as modification of the orders is unauthorized under the statute.

Code § 8.01-428(B) permits a circuit court to correct a written order or other part of the record at any time before an appeal is docketed, even beyond the 21 days ordinarily permitted for modifying judgments under Rule 1:1.  *See Belew v. Commonwealth*, 284 Va. 173, 177-78 (2012).  However, the statute's purpose is limited to giving circuit courts a mechanism to excise inadvertent clerical mistakes and oversights from the record and its written orders.  Code § 8.01-428(B) does not extend the time limit in Rule 1:1 to modify a judgment for any reason.  "[T]he purpose of a nunc pro tunc entry is to correct mistakes of the clerk or other court officials, or to settle defects or omissions in the record so as to make the record show what actually took place."  *Council v. Commonwealth*, 198 Va. 288, 293 (1956).

The plain language of Code § 8.01-428(B) makes clear that the statute only applies where the error in the circuit court's order arose from an "oversight or inadvertent omission" or "clerical mistake."  Virginia courts have declined to apply the statute where the record suggests that the omission did not result from an inadvertent clerical mistake or oversight.  *See Keough v. Pelleieri*, No. 0914-95-4, slip op. at 4, 1995 Va. App. LEXIS 801, at *5 (Oct. 31, 1995); *Dorn v. Dorn*, 222 Va. 288, 291 (1981); *Minor v. Commonwealth*, 66 Va. App. 728, 740 (2016).  In *Keough v. Pelletieri*, for instance, this Court held that a circuit court may not modify a consent order to add a provision adjusting the wife's share of her husband's military pension because the evidence in the record showed that the wife's attorney had deliberately omitted that provision from the order at the request of the husband's attorney.  Slip. op. at 2-5, 1995 Va. App. LEXIS 801, at *3-6.  In holding that the order may not be modified, this Court noted, "the evidence demonstrates that the modification to the consent decree was not an act of oversight or inadvertent omission as required under Code § 8.01-428(B) but was instead a deliberate revision."  *Id.* at 4-5, 1995 Va. App. LEXIS 801, at *5-6.

At the en banc oral argument, a member of this Court raised the question of whether the Virginia Supreme Court's opinion in *Dorn v. Dorn* in support of the argument that Code § 8.01-428(B) is applicable. In that case, the Supreme Court permitted a circuit court to modify a divorce decree to correct a provision of the order requiring "bi-weekly" child support payments after the Court found that this provision resulted from an unintended drafting error in the parties' stipulation agreement which was later incorporated into the court's decree. 222 Va. at 291. The Virginia Supreme Court held that circuit courts may apply Code § 8.01-428(B) to modify an order "in the rare situation" where the evidence in the record clearly supports the finding of a clerical mistake or oversight covered by the statute. *Id.* at 292. *See also Minor*, 66 Va. App. at 741 (holding that the statute permitted a circuit court to modify its sentencing order to add a case reference which was omitted from the original order due to a clerical oversight).

But the origins of the circuit court's error here are clearly distinguishable from those in *Dorn*. While the evidence in *Dorn* supported a finding that the error in the court's decree resulted from an unintentional drafting mistake of the parties, the record here strongly suggests that the circuit court's continued omission of the special gang-related probation conditions from the 2021 revocation sentencing orders arose not from an inadvertent clerical mistake or oversight but from a mistake of law.

In reviewing the 2021 revocation sentencing orders, the circuit court stated that Watts had "violated the oral order that [the court] intended to enter" and "the written order that was entered because it says he is supposed to follow all instructions of probation, and that included special gang instructions." Given the assumptions expressed here, we can infer that the circuit court would have considered it unnecessary to add language expressly incorporating the court's oral ruling because the court believed this ruling could be given effect independently of a written court order. It leads to the reasonable conclusion that the court would have considered it

- 18 -

unnecessary to add language expressly incorporating the 2019 special gang document or to amend the record of the 2021 revocation proceedings to include the document because the court believed that this document was already incorporated into the written orders. Likewise, it is apparent that the court did not modify the language of the orders to expressly order compliance with the special gang-related probation conditions because it believed the language was already sufficient to order such compliance.

Further, the circuit court had multiple opportunities to modify the 2021 revocation sentencing orders to include the special gang-related probation conditions but chose not to do so. This leads us to conclude that the omission was not merely an oversight or inadvertent mistake. Between the time the orders were issued in September 2021 and the appeal of this case was docketed in October 2022,[9] the circuit court took no action to modify the orders. At the 2022 revocation hearing, the court read a portion of its previous oral ruling into the record but did not modify the orders to incorporate the oral ruling. At the same hearing, it admitted the 2022 special gang document into evidence but did not amend the record to also include the 2019 special gang document or add language to the previous sentencing orders to expressly incorporate this document. The court also did not at any time add language to the orders expressly imposing special gang-related probation conditions.

Code § 8.01-428(B) empowers trial courts to amend their orders to correct clerical errors "arising from oversight" or "inadvertent omission[s]." This power to amend clerical errors does not extend to looking back to a years-old order and make it seem that the court took action that, with the benefit of hindsight, the trial court wished it had taken. In *Hackett v. Commonwealth*, 293 Va. 392, 401 (2017), the Court held that the trial court did not have the authority to amend

---

[9] Pursuant to Rule 5A:10(e), this Court acknowledged receipt of the record of this case from the circuit court on October 14, 2022.

its conviction and sentencing orders because neither the conviction nor the sentencing orders were modified, vacated, or suspended within 21 days. The Court has explained:

> The purpose of a nunc pro tunc order entry is to correct mistakes of the clerk or other court officials, or to settle defects or omissions in the record so as to make the record show what actually took place. It is not the function of such entry by a fiction to antedate the actual performance of an act which never occurred, to represent an event as occurring at a date prior to the time of the actual event, or to make the record show that which never existed.

*Id.* at 400; *see also Adams v. Lee*, 110 Va. Cir. 297, 299 (Chesapeake, Sept. 14, 2022). Hackett presented the argument that the case be resolved by entering a nunc pro tunc order under the theory that there was a scrivener's error in the conviction and sentencing order. 293 Va. at 400. The judge stated on the record, "It's not a scrivener's error. I mean this is exactly what was agreed to be done and what was supposed to be done and what I did. There is no scrivener's error in that." *Id.* The Court found that the orders reflected the actions the trial court intended to take when those orders were entered. *Id.* Code § 8.01-428(B) allows the court to "correct[] the record . . . under the accepted fiction that the order relates back to the date of the original action of the court 'now for then.'" *Roane v. Commonwealth*, No. 0032-23-1, slip op. at 15, 2024 Va. App. LEXIS 198, at *21 (Apr. 29, 2024). The court is not permitted to "use this authority to take action that it intended to take but did not and may merely wish in hindsight it had taken." *Id.* at 16, 2024 Va. App. LEXIS 198, at *21 (citing *Davis v. Mullins*, 251 Va. 141, 149-50 (1996)). "A *nunc pro tunc* entry should not be made . . . to show what the court should have done as distinguished from what actually occurred. The court's authority . . . extends no further than the power to make the record entry speak the truth." *Bynum v. Commonwealth*, No. 1730-23-3, slip op. at 3, 2023 Va. App. LEXIS 375, at *4 (June 6, 2023) (alterations in original) (quoting *Council*, 198 Va. at 292).

Compare the limited uses of nunc pro tunc orders in case law to the two cases that our colleagues say stand for the proposition that courts can use Code § 8.01-428(B) to correct "significant errors" in a years-old sentencing order. *See infra* at 32-33 (citing *Harris v. Commonwealth*, 222 Va. 205 (1981), and *Minor v. Commonwealth*, 66 Va. App. 728 (2016)). First, in *Harris*, the trial court used a nunc pro tunc order to fix an omission in an order reflecting that a juvenile could be tried as an adult. *See* 222 Va. at 211 ("[T]he *nunc pro tunc* entry was proper, and the statutory directive that an order be entered advising the Commonwealth's Attorney that he may seek an indictment was fulfilled."). The trial court entered the nunc pro tunc order to certify the court's previous ruling, allowing the defendant to be tried as an adult. *Id.* at 208. But because of the Commonwealth Attorney's failure to timely file an order as directed, that order was not "memorialize[d]" in writing. *Id.* at 210 ("Manifestly, the nonentry of a timely order was caused by the prosecutor's failure to follow directions. That mistake was compounded by the failure of defense counsel to return the order either to the court or the prosecutor."). Unlike here, *Harris* involved a modification to enter an order reflecting the court's ruling at the hearing.

Next, in *Minor*, the appellant pleaded "guilty to, was convicted of, and sentenced for, a rape of a child." 66 Va. App. at 741. His plea was supported with a written plea agreement. *See id.* at 733-34 ("[A]ppellant appeared before the trial court and entered the guilty pleas specified in the written plea agreement."). While the sentencing order correctly stated Minor's total sentence, it did not reflect his sentence for that particular offense. *Id.* at 735-36. The trial court entered a nunc pro tunc order so that the sentencing order accurately reflected all of Minor's sentencing. *Id.* at 736. Again, unlike here, the nunc pro tunc order in *Minor* edited an order to reflect something that had occurred before the court—to which all parties agreed on the record.

No doubt Judge Raphael and the joining judges are correct that the modifications in *Harris* and *Minor* carried "significant" legal consequences. But allowing the court to include the oral "special condition" of probation, unlike the nunc pro tunc orders in *Harris* and *Minor*, would involve injecting new legal meaning into an order entered years ago—before the trial court had the benefit of our case law clarifying the meaning of Code § 19.2-306.1. Code § 8.01-428(B) does not enable a trial court to reassume jurisdiction over a case to change the legal import of one of its orders.

A nunc pro tunc order is inappropriate because it asks the court to go back and alter an order so that the trial court can then make a subsequent ruling based on the changed record. Altering a written order to change a technical violation into a non-technical violation exceeds the purpose of a nunc pro tunc. *Hackett*, 293 Va. at 400. The 2022 court incorrectly found that its 2021 oral pronouncement sufficiently incorporated the gang-related association conditions as a non-technical probation condition. But that was not a scrivener's error—it was a legal ruling that the circuit court, with the benefit of "hindsight," cannot change.

To allow the court to go back and change its order broadens the term "clerical error" beyond any plausible reading. A "clerical error" is "[a]n error resulting from a minor mistake or inadvertence and not from judicial reasoning or determination; esp., a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading." *Clerical Error*, *Black's Law Dictionary* (11th ed. 2019). The phrase "clerical error," therefore, cannot be broadened to allow creating a new provision in a sentencing order—which Judge Raphael's concurrence effectively admits is what is happening here. *Infra* at 30 ("It would likewise have been an abuse of discretion here for the trial court to interpret the 2021 order to incorporate the gang-association prohibition as a special condition. As the trial court candidly found, it's just 'not there.'").

Because the court's statements interpreting the 2021 revocation sentencing orders and lack of any subsequent action to modify them allow us to infer that the continued omission of the gang-related prohibitions was not an inadvertent clerical mistake or oversight as required by Code § 8.01-428(B), we would not grant the circuit court leave to modify the orders under the statute.

III. The circuit court erred in ruling that Watts's probation violation is a non-technical violation based on its finding that Watts had violated a "special condition" of probation.

A. *A violation of a "special condition" of probation is not necessarily a non-technical violation under Code § 19.2-306.1.*

The circuit court erroneously ruled that because Watts violated a "special condition" of probation, his probation violation was a non-technical violation under Code § 19.2-306.1. Upon finding that Watts violated a "special condition" of probation under the court's 2021 oral ruling and the 2021 revocation sentencing orders, the circuit court ruled that "therefore[,] his violation of the special instructions for confirmed gang members is not a technical violation as set forth in the statute." Consequently, the court ruled that the "fourteen-day limit" for a second technical violation "did not apply" and that the "appropriate guidelines are the ones that call for zero to six months of active time."

After the circuit court sentenced Watts for a non-technical probation violation, this Court issued its opinion in *Delaune v. Commonwealth*, 76 Va. App. 372, *aff'd*, 302 Va. 644 (2023), rejecting the contention that a violation of any "special condition" of probation is a non-technical violation for purposes of sentencing under Code § 19.2-306.1. *See id.* at 382-83. As explained in *Delaune*, the sentencing limits for first and second technical probation violations apply if the violation is based on conduct defined as a "technical violation" in the ten technical violations enumerated in Code § 19.2-306.1(A). *Id.*

- 23 -

In *Delaune,* the defendant's suspended sentence was revoked based, in part, on the defendant's use of controlled substances. The sentencing order that placed Delaune on supervised probation required her to "be drug-free" as a condition of the probation and suspended sentence. The trial court ruled that Delaune's probation violation was a special, non-technical violation because her drug use violated a special condition of probation imposed in the sentencing order. In reversing this ruling, this Court held that "[w]hen the violation conduct matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a "technical violation." *Delaune*, 76 Va. App. at 383.

Delaune's drug use was a technical violation because clause (vii) of Code § 19.2-306.1(A) defines "technical violation" to include a probationer's failure to "refrain from the use, possession, or distribution of controlled substances." Therefore, *whether or not a condition of probation is labeled a "special condition" or included in the sentencing order as a condition of the suspended sentence*, a violation of the condition is a technical violation under Code § 19.2-306.1 if the violation is based on the probationer's failure to comply with any of the ten requirements set forth in Code § 19.2-306.1(A).

At the time the circuit court sentenced Watts for a non-technical violation of probation, this Court had not yet issued our opinion in *Delaune.* The circuit court, therefore, rendered its judgment in the absence of any guidance from appellate courts on the issue of how Code § 19.2-306.1 should be applied to determine whether a violation of probation is technical or non-technical under the statute. This Court's holding in *Delaune* firmly establishes the principle that a violation of a probation condition is technical where the probationer's underlying violation conduct matches conduct enumerated in Code § 19.2-306.1(A), regardless of the label that a circuit court chooses to attach to the condition. We now apply the principle outlined in *Delaune* to determine the character of Watts's probation violation.

B. *Both Watts's probation violations are technical violations under Code § 19.2-306.1.*

Watts's failure to report as instructed for three scheduled meetings with his probation officer is a technical violation because clause (v) of Code § 19.2-306.1(A) defines "technical violation" as "a violation based on the probationer's failure to . . . report as instructed" to the probation officer. *See* Code § 19.2-306.1(A). Likewise, Watts's failure to follow his probation officer's instructions to refrain from gang involvement is a technical violation because clause (v) of Code § 19.2-306.1(A) also defines "technical violation" as "a violation based on the probationer's failure to . . . follow the instructions of the probation officer." Because Watts's violation conduct "matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a "technical violation." *Delaune*, 76 Va. App. at 383.

To determine whether, for purposes of Code § 19.2-306.1, a probationer's violation conduct is appropriately described as a failure to follow the instructions of the probation officer, we must determine whether the probation officer's instructions relate to a court-ordered condition of the probationer's suspended sentence and probation. When a probationer fails to comply with a court-ordered probation condition to do or refrain from doing specified conduct that "does not fall within any of the ten enumerated technical violations under Code § 19.2-306.1(A)," the violation conduct is a "*failure to follow* the *instructions of the court*." *See Burford v. Commonwealth*, 78 Va. App. 170, 183-84 (2023) (emphases added) (holding that a probationer's failure to complete a recommended psychosexual evaluation was a non-technical violation under Code § 19.2-306.1 because the recommendation was tied to a direct court order requiring him to complete a mental health evaluation and to "follow all recommendations" related to the evaluation).

Further, this Court's, sitting en banc, recent holding in *Shifflett v. Commonwealth*, 81 Va. App. 277 (2024) (en banc), reaffirms the principle that we look to the language of the written

sentencing order to determine whether a probation violation is technical or non-technical. *Id.* at 296-97. *Shifflett* held that the probationer had committed a non-technical violation by failing to complete a sex offender treatment program that his probation officer had directed him to complete because it found that the sentencing order contained a requirement that the probationer complete such a program. *Id.* Based on this finding, the Court in *Shifflett* concluded that the probationer's failure to complete the program was a violation of a direct court order and not merely a failure to follow his probation officer's instruction and that, therefore, the probationer's conduct constituted a non-technical violation under Code § 19.2-306.1. *Id.* at 295-96, 297.

The circuit court sentenced Watts to a period of active incarceration that exceeds the statutory maximum sentence for a second technical violation of probation. Under Code § 19.2-306.1(C), there is "a presumption against imposing a sentence of a term of active incarceration for any second technical violation" of probation. Code § 19.2-306.1(C). "However, if the court finds, by a preponderance of the evidence, that the defendant committed a second technical violation and he cannot be safely diverted from active incarceration through less restrictive means, the court may impose *not more than 14 days of active incarceration* for a second technical violation." *Id.* (emphasis added). The circuit court exceeded this limit by imposing a sentence of active incarceration for three years. Because the circuit court unlawfully imposed a sentence of active incarceration that exceeds the statutory maximum sentence for a second technical probation violation, Watts must, therefore, be resentenced as required by the sentencing limitations set forth in Code § 19.2-306.1(C).

- 26 -

CONCLUSION

We find that the circuit court did not interpret its own order to include written

gang-related prohibitions. Nor do we find that such an interpretation would be reasonable.

Therefore, this Court reverses the circuit court's judgment and remands for resentencing.

We would further hold that the gang-related conditions are the instruction of Watts's

probation officer and are technical conditions of his probation. Nor does Code § 8.01-428(B)

enable the circuit court to reassume jurisdiction over the sentencing order to insert that

gang-related condition as non-technical conditions of Watts's probation. Under these

circumstances, we would have our Court reverse the circuit court's judgment, vacate the

revocation sentencing order, and remand for resentencing subject to the limitations in Code

§ 19.2-306.1(C).[10]

*Reversed, vacated, and remanded.*

---

[10] Circuit Court Case No. CR16000356-02.

Raphael, J., with whom Athey, Malveaux, Lorish and Frucci, JJ., join, in reversing and with respect to instructions to the trial court on remand. [11]

No one disputes that a condition of Watts's supervised probation under the 2021 sentencing order signed by Judge Sandwich was that he refrain from associating with known gang members. Watts admits that he violated that condition. The question is whether the prohibition on gang association was a "special condition" or a condition required only by the probation officer. If it was the latter, all agree that Watts committed only a "technical violation" for which Code § 19.2-306.1 would cap his sentence at 14 days. If it was a special-condition violation, by contrast, then the trial court did not abuse its discretion in revoking Watts's suspended sentence and reimposing four years with one suspended.

## I.

I agree with the conclusion in Part I of the analysis in Judge Chaney's plurality opinion that the trial court's 2021 order cannot reasonably be interpreted to include a prohibition on gang association as a special condition expressly ordered by the court. While it is "well-established . . . that circuit courts have the authority to interpret their own orders," the "interpretation must be reasonable." *Roe v. Commonwealth*, 271 Va. 453, 457-58 (2006). The abuse-of-discretion standard applies "in determining whether the circuit court's interpretation of its order is reasonable." *Id*. at 458.

The trial court below did not purport to "interpret" any text of the 2021 order to include the gang-prohibition as a special condition. Although the trial court found that "[i]t was clearly the intent of Judge Sandwich" to impose a special condition, that language "didn't find its way into the order . . . . It's not there." The trial court at one point said that Watts "violated the *oral*

---

[11] As set forth in Judge Chaney's plurality opinion, Judges Chaney, Huff, Ortiz, Causey, Friedman and Callins dissent with respect to the Court's instructions on remand.

order that . . . Judge Sandwich intended to enter." (Emphasis added.) But that is quite different from finding it incorporated by reference through the *text* of the written order itself.

The dissent concludes that the trial court reasonably found the special condition incorporated by provisions in the sentencing order that Watts was "placed on probation 'under the same terms and conditions as previously ordered'" and "'*must comply with all the rules and requirements set by the probation officer*.'" *Infra* at 41. But nothing in the transcript of the revocation hearing shows that the trial court interpreted *that language* as incorporating the special condition. On its face, that language simply defers to the probation officer to set the rules and requirements of probation. Indeed, the trial court said, "I don't think [the special condition] has to be in the order. Because the [*probation*] *guidelines themselves* provide a special gang member condition instruction." (Emphasis added.)

Assuming for argument's sake that the trial court had said it was interpreting the text of the 2021 order to incorporate the prohibition on gang association as a special condition, that would have been an unreasonable interpretation and therefore an abuse of discretion under *Roe*. There is simply no textual anchor in the order that could reasonably support that interpretation.

In *Roe*, the Supreme Court held that this Court erred by failing to find an abuse of discretion in the trial court's interpretation of its prior order. 271 Va. at 458-59. The trial court there had interpreted an unqualified order dismissing criminal charges as an order merely nolle prossing them. *Id.* at 456-57. But a dismissal and a nolle pros "are separate and distinct procedures." *Id.* at 458. A nolle pros may be entered "only in the discretion of the court, upon motion of the Commonwealth with good cause therefor shown." *Id.* (quoting Code § 19.2-265.3). By contrast, "[a] dismissal at the request of the Commonwealth does not require a showing of good cause." *Id.* Thus, the trial court abused its discretion by interpreting its prior order as a nolle pros, rather than a dismissal with prejudice. *Id.*

It would likewise have been an abuse of discretion here for the trial court to interpret the 2021 order to incorporate the gang-association prohibition as a special condition. As the trial court candidly found, it's just "not there."

We granted en banc review here to determine whether the trial court abused its discretion by interpreting the 2021 order to incorporate the prohibition on gang affiliation as a special condition. Because I agree with the plurality that the trial court erred in doing so, I join in the judgment to vacate Watts's sentencing and to remand for further proceedings.

## II.

Still, I disagree with the plurality about the instructions to the trial court on remand. The plurality would direct the trial court to treat Watts's violation as a second technical violation, thereby capping the trial court's authority to sentence Watts to no more than 14 days in jail. Given the trial court's conclusion that Judge Sandwich clearly intended to impose the gang prohibition as a special condition, I would instead permit the trial court on remand to consider whether the 2021 order should be amended nunc pro tunc under Code § 8.01-428(B) to incorporate that special condition.[12]

That code section provides a narrow but well-recognized "exception" to the normal requirement under Rule 1:1 that a trial court loses jurisdiction to alter a final order 21 days after its entry. *Davis v. Mullins*, 251 Va. 141, 149 (1996). Nearly 70 years ago,

---

[12] Code § 8.01-428 provides:

> B. Clerical mistakes. Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

in *Council v. Commonwealth*, 198 Va. 288, 292 (1956), [our Supreme Court] adopted the majority view that the trial court has the inherent power, independent of statutory authority, to correct errors in the record so as to cause its acts and proceedings to be set forth correctly . . . . [T]he court has the inherent power, independent of the statute, upon any competent evidence, to make the record "speak the truth."

*Id.* (quoting *Netzer v. Reynolds*, 231 Va. 444, 449 (1986)). Code § 8.01-428(B) simply codifies that power.

"When acting nunc pro tunc, the court does not reacquire jurisdiction over the case." *Id.* Instead, "the trial court merely corrects the record by entry of an order nunc pro tunc, under the accepted fiction that the order relates back to the date of the original action of the court 'now for then.'" *Id.* The power is "restricted to placing upon the record evidence of judicial action [that] has actually been taken, and presupposes action taken at the proper time." *Id.* (quoting *Council*, 198 Va. at 292). But the power must be "narrowly construed and applied." *Id.*

For instance, in *Dorn v. Dorn*, 222 Va. 288 (1981), the Court held that the trial court erred in concluding that the finality of the final divorce decree under Rule 1:1 precluded it from considering whether the decree should be corrected. Although the decree set husband's child-support obligation at $100 per child "per month," wife claimed it should have been $100 per child "bi-weekly." *Id.* at 291-92. The parties' stipulation showed agreement that support should be paid "bi-weekly," and that interpretation was supported by the attorney who drafted it. *Id.* at 290. The Court reversed the trial court's judgment and remanded the case "for further proceedings to determine whether the evidence clearly support[ed] the husband's claim that the separation agreement and divorce decrees contained a mutually unintended drafting error." *Id.* at 292. The Court said that "Code § 8.01-428(B) . . . gives courts the authority to enter *nunc pro tunc* orders . . . where the evidence clearly supports the conclusion that an error covered by Code § 8.01-428(B) has been made." *Id.* The Court added that Rule 1:1 "was not intended to limit,

and in fact could not limit, the trial court's statutory authority to correct clerical errors in the judgment or errors 'therein arising from oversight or from an inadvertent omission . . . at any time.'" *Id.* at 291 (quoting Code § 8.01-428(B).

The plurality would distinguish *Dorn* on the ground that the trial court's error here was "a mistake of law." *Supra* at 18. But our jurisprudence has not recognized any "mistake of law" exception to the power of a trial court to "make the record 'speak the truth.'" *Davis*, 251 Va. at 149 (quoting *Netzer*, 231 Va. at 449). It is also dangerous to suggest such an exception. When we discover legal errors in criminal sentencing orders, we routinely remand the case for the error to be corrected under Code § 8.01-428(B),[13] or for the trial court to consider whether an error exists that should be corrected.[14] We should not compromise that practice by excusing such errors as mere legal mistakes by the trial court.

Nunc pro tunc orders under Code § 8.01-428(B) have been used to correct a variety of significant errors and omissions in criminal cases. For example, in *Harris v. Commonwealth*, 222 Va. 205 (1981), the circuit court's jurisdiction over the juvenile defendant depended on a timely order that he could be tried as an adult. Although the circuit court's letter opinion made the requisite findings and directed the prosecutor to prepare the order "forthwith," no order was entered within the 21 days required by statute due to the fault of both the prosecutor and the defense lawyer. *Id.* at 210. The Supreme Court held that the circuit court properly entered a nunc pro tunc order to correct that omission. *Id.* at 210-11. And in *Minor v. Commonwealth*, 66

---

[13] *See, e.g.*, *Swezey v. Commonwealth*, 77 Va. App. 809, 818, 820 (2023); *Haefele v. Commonwealth*, 75 Va. App. 591, 606 n.7 (2022); *Bagley v. Commonwealth*, 73 Va. App. 1, 30 n.10 (2021); *Stevens v. Commonwealth*, 72 Va. App. 546, 560 n.5 (2020); *Green v. Commonwealth*, 72 Va. App. 193, 205 n.8 (2020); *Meekins v. Commonwealth*, 72 Va. App. 61, 64 n.1 (2020).

[14] *See, e.g.*, *Nelson v. Commonwealth*, 73 Va. App. 617, 628 & n.7 (2021); *Jones v. Commonwealth*, 70 Va. App. 307, 311 n.1 (2019) (en banc); *Armstead v. Commonwealth*, 56 Va. App. 569, 581 n.10 (2010).

Va. App. 728 (2016), we affirmed the use of a nunc pro tunc order to correct a final sentencing order that had failed to specify that the defendant had been convicted and sentenced to 20 years' imprisonment with 10 years suspended for raping a child. *Id.* at 735-36, 740-41.

Permitting the trial court to correct the record to speak the truth does not conflict with the maxim that "a circuit court speaks only through its written orders." *Galiotos v. Galiotos*, 300 Va. 1, 14 (2021). The Court in *Rollins v. Bazile*, 205 Va. 613 (1964), distinguished "between the rendition of a judgment and its entry by the clerk on the records of the court." *Id.* at 617.

> "The rendition of a judgment is the judicial act of the court, whereas the entry of a judgment by the clerk on the records of the court is a ministerial, and not a judicial, act. The entry or recording of the instrument does not constitute an integral part of, and should not be confused with, the judgment itself." Consequently, the judgment itself is not that which may be entered or recorded, but that which is considered and delivered by the court.

*Id.* (quoting 30A Am. Jur., Judgments, § 94, p. 226).

The Court applied that distinction in *Jefferson v. Commonwealth*, 269 Va. 136 (2005), in the context of correcting an earlier sentencing order. When the defendant in *Jefferson* appeared at his probation-revocation hearing, the trial judge "realized [that] he had not signed the draft of the sentencing order that was lodged in the court file," which had imposed a 20-year sentence with all but 6 months suspended. *Id.* at 138. Although the defendant had served that time and his attorney did not dispute that the unsigned order "accurately set forth the proceedings as they occurred at the sentencing hearing," he argued that the defendant's probation could not be revoked under an unsigned order. *Id.* The trial court overruled the objection and entered a new sentencing order nunc pro tunc to the date of the earlier sentencing hearing. *Id.*

In upholding that action, the *Jefferson* Court repeated that "[t]he rendition of a judgment duly pronounced is the judicial act of the court, and the entry or recording of the instrument memorializing the judgment 'does not constitute an integral part of, and should not be confused

- 33 -

with, the judgment itself.'" *Id.* at 139 (quoting *Rollins*, 205 Va. at 617). The Court added that correcting the record this way "does not affect the rule" that a court speaks only through its orders because that rule "does not purport to govern the substantive validity of the judicial act." *Id.* Entering the nunc pro tunc order was proper under Code § 8.01-428(B) so the record would "speak[] the truth about what transpired at the sentencing hearing." *Id.* at 140. *Accord Lewis v. Commonwealth*, 295 Va. 454, 465 (2018) ("Courts prefer written orders memorializing judgments in other cases for their evidentiary value, but they are not required when the judgment can be established by other proof.").

The same is true here. If, as the trial court found, Judge Sandwich had "clearly" made the prohibition on gang affiliation a special condition of probation, though that condition was omitted from the sentencing order, the trial court should have entered a nunc pro tunc order to correct it.[15]

Though nothing in the record supports it, the parties at oral argument theorized about the possibility that Judge Sandwich may have changed his mind about imposing the special condition between when he pronounced sentence and when he signed the sentencing order. Of course, the trial court's power to correct the record through a nunc pro tunc order "is restricted to placing upon the record evidence of judicial action that actually has been taken." *Jefferson*, 269

---

[15] Relatedly, our Court should be careful not to misconstrue the principle that "the scope of a consent decree must be discerned within its four corners," *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971), as a general rule about how to interpret *other* judicial orders and decrees. As the Court in *Armour* explained, the four-corners principle applies to consent decrees because they are negotiated by parties with divergent interests. *See id.* at 681-82. "Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other . . . ." *Id.* at 681. "[T]he basic import of *Armour* . . . is that, since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts . . . ." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236 (1975) (footnote omitted). Although dicta in *Smoot v. Commonwealth*, 37 Va. App. 495, 500 (2002), quoted the four-corners phrase from *Armour*, the *Smoot* panel failed to distinguish between consent decrees and other judicial orders. We should be cautious not to extend *Armour* beyond its application to consent decrees.

Va. at 140. It cannot be used "to show what the court should have done as distinguished from what actually occurred." *Id.* (quoting *Council*, 198 Va. at 292). In light of the parties' statements at oral argument here, the trial court should be permitted to consider the possibility that Judge Sandwich changed his mind about making the gang-affiliation prohibition a special condition. But if the trial court finds from the record before it that the condition was inadvertently omitted from the sentencing order, the trial court is empowered to correct it.[16]

\* \* \*

The trial court found that Judge Sandwich intended to include the special condition against gang affiliation in the 2021 sentencing order. But the court struggled to find the right vehicle to effectuate that intent. The correct vehicle was Code § 8.01-428(B). I agree with the plurality that this case should be reversed and remanded for resentencing. But the trial court is permitted on remand to consider whether to amend the 2021 sentencing order nunc pro tunc if necessary to make the order speak the truth about what happened at the 2021 sentencing hearing.

---

[16] The remand is without prejudice to Watts's ability to argue that it would deny him due process for the trial court to enter an order nunc pro tunc to correct the 2021 order to incorporate the special condition. It will be for the trial court to determine how such an objection, if made, should be resolved.

Fulton, J., with whom Decker, C.J., Beales, O'Brien and AtLee, JJ., join, dissenting from the decision to reverse and remand, but concurring in the decision to remand with instructions to consider whether clerical error exists.

Because we believe that the appropriate disposition for this case would be to affirm the trial court on the grounds that the trial court's interpretation of its own order was reasonable, we dissent to the plurality's decision to reverse. However, recognizing the divergence in the two competing opinions—the plurality, which would reverse the trial court's judgment with instructions to re-sentence Watts treating his violation as a second technical violation, and the concurrence, which would reverse with instructions to the trial court to review its September 14, 2021 written order for a possible clerical omission pursuant to Code § 8.01-428—we also write separately to concur in part with the decision to remand for consideration under Code § 8.01-428. We agree that *if* the trial court's judgment is to be reversed, then the appropriate disposition of this case would be to remand to the trial court with instructions to review for a possible clerical error, as explicated in the concurrence.[17] We believe that if an appellate court reverses a trial court, a fundamental duty of that court is to provide adequate direction to the trial court regarding how to proceed—how to correct the error or end the case. Although we do not believe the trial court erred, we believe our Court should not leave the path forward unclear. It is unfair to the parties and the trial court to reverse a ruling and provide no direction. It appears that our colleagues in favor of reversal cannot agree or provide a majority view regarding what happens when the case is reversed. So, in an effort to resolve the matter for all involved, we feel compelled to offer our support for what we believe is the most reasonable, logical, and lawful way forward. We see a remand as described in the concurrence as an appropriate resolution despite our belief that the trial court's interpretation of the order was reasonable. Because the

---

[17] Given the unique circumstances of this case, namely that the trial court recognized an apparent material omission which, if confirmed, would accurately reflect a court-ordered special condition, we recognize that the remedy employed here should be of limited application.

concurring opinion has amply laid out the rationale regarding reversal and instruction to review for a clerical error, we do not address that analysis in this opinion. Instead, we write only to explicate the rationale behind our partial dissent.

Because both the plurality and the concurrence amply lay out the facts and background here, we state only what we believe is necessary to further elucidate the unique contours of this case. This case arises from the trial court's imposition of an active sentence of more than 14 days, following Rasheem Watts's second probation violation. The violation at issue relates to Watts's repeated failure to refrain from associating with members of a criminal street gang. Both parties agree that: (1) one of the conditions of Watts's second period of probation was to refrain from such association; and (2) that Watts engaged in conduct that violated this prohibition. The parties disagree, however, as to: (1) the source of this condition; and (2) whether the violation was of a technical or non-technical nature, per Code § 19.2-306.1. Watts argues that the condition was imposed by his probation officer, making the prohibition an "instruction" from his probation officer pursuant to Code § 19.2-306.1(A)(v). In contrast, the Commonwealth argues that the trial court itself adopted the prohibition as a "special condition" of Watts's second period of probation, making Watts's violation a non-technical violation under Code § 19.2-306.1. Because we agree with the Commonwealth that the trial court adopted the prohibition at issue, we would hold that the condition was a special condition imposed by the trial court and that the violation at issue was non-technical in nature. Thus, we believe the trial court did not err by imposing an active period of incarceration greater than 14 days.

BACKGROUND

After his initial conviction and subsequent release, Watts reported to this probation officer and signed a form entitled "Specialized Instruction for Validated Gang Members," confirming his association with the "Rollin 40's CRIPS" criminal street gang, and agreeing not to have any contact with members of this gang (the "gang-related prohibitions"). In January 2020, Watts's probation officer filed a major violation report alleging that Watts had violated the terms of his probation, namely the gang-related prohibitions. In September of 2021, the trial court held a probation revocation hearing, ultimately finding that Watts had indeed violated the gang-related prohibitions. In finding Watts in violation and announcing his sentence, the trial court also orally pronounced that:

> I'm placing you back on supervised probation for a period of five years, like you were on before. I'm placing you on ten years of good behavior. I also specifically incorporate as a special condition of your probation all the gang related prohibitions that were in the previous violation, or your previous order that the probation and parole puts on you. So that there's no confusion, this is a special condition of probation. All those conditions that they put on you are going to be part and parcel of the order as a special condition of probation.

On both sentencing orders, the court conditioned the suspended sentences on supervised probation for five years "under the same terms and conditions as previously ordered." The September 2021 revocation sentencing orders further provided, as a condition of the suspended sentences and probation, that "[t]he defendant must comply with all the rules and requirements set by the probation officer. Probation may include substance abuse counseling and/or testing as deemed necessary by the Probation Officer." Nevertheless, the sentencing order did not explicitly contain any language specific to the aforementioned gang-related prohibitions.

Watts served his active time, and again was released to the supervision of his probation officer. He again signed a gang-related instructions form entitled "Special Instructions—

- 38 -

Confirmed Gang/STG Members." In this form, Watts again acknowledged his gang affiliation and again promised not to contact the members of his gang. Nevertheless, Watts again engaged in conduct that violated these gang-related prohibitions. Watts's probation officer filed a major violation report, and the trial court held a revocation hearing on July 8, 2022. At the hearing, Watts stipulated to his violative conduct. The only issue was whether his conduct amounted to a failure to follow his probation officer's instructions (and was therefore a mere second technical violation), or whether his conduct was a violation of the trial court's own special condition. Ultimately, the trial court determined that it had formerly imposed the gang-related prohibitions as special conditions, and thus held that the violation was non-technical in nature. The trial court thereafter sentenced Watts to more than 14 days of active time.

In determining that Watts's conduct violated the trial court's own special condition, the trial court made several statements, clearly wrestling with the appropriate disposition and rationale. First, the trial court stated that it reviewed the September 2021 revocation sentencing order and found no use of the phrase "special conditions" or "gang conditions" in the order. Nevertheless, the trial court opined that it was clearly the former judge's "intent" to include the gang-related prohibitions in the order. The trial court went on to state that "I don't think it has to be in the order. Because the guidelines themselves provide a special gang member condition instruction. They provide that. Without any order from the court they provide that. He clearly violated the special gang member conditions and instructions." But in finding Watts in violation of his probation, the trial court clarified its rationale, stating

> So I do find that he has violated the special conditions. He has violated the oral order that Judge, the order that Judge Sandwich intended to enter. *He has violated the order, the written order that was entered because it says he is supposed to follow all instructions of probation, and that included special gang instructions.*

- 39 -

(Emphasis added).  The trial court revoked Watts's four-year suspended sentence and imposed a sentence of incarceration for four years, with one year suspended.

ANALYSIS

The issue presented on appeal is whether the trial court's interpretation of the September 2021 written order was reasonable.  *See McGinnis v. McGinnis*, 69 Va. App. 572, 578 (2018); *Smoot v. Commonwealth*, 37 Va. App. 495, 500 (2002) ("Although trial courts have discretion to interpret their own orders, that discretion must be exercised reasonably and not arbitrarily or capriciously.  Furthermore, an order must be interpreted within its four corners." (citations omitted)).  We believe that the text of the order may be reasonably interpreted to include language imposing the gang-related prohibitions and that therefore the trial court was within its discretion in interpreting it as such.  Therefore, we would affirm the trial court's ruling on this basis.

The crux of our disagreement with the plurality and the concurrence on this point is whether the text of the September 14, 2021 written order contains some sort of textual anchor that can reasonably be read to incorporate the gang-related prohibitions as a special condition of the court.  As pertinent to this question, we believe the two aforementioned statements from the order, read in conjunction with the trial court's oral pronouncement from the bench, rise to a sufficient level so as to meet this standard of reasonability.

Here, the trial court, in pronouncing the terms of Watts's probation, expressly made the gang provisions ordered by the probation officer a "special condition" of the court, stating:

> I also specifically incorporate as a special condition of your probation all the gang related prohibitions that were in the previous violation, or your previous order that the probation and parole puts on you.  *So that there's not confusion, this is a special condition of probation.  All those conditions that they put on you are going to be part and parcel of the order as a special condition of probation.*

(Emphasis added).

Notwithstanding that the trial court did not expressly include any language in its written order pertaining to this "gang-related special condition," the trial court was entitled to interpret the written order to include the above-mentioned special condition. *See State ex rel. Moore v. Munchmeyer*, 197 S.E.2d 648, 653 (W. Va. 1973) ("[T]his Court will construe a judgment order as sufficient although it does not contain specific adjudicatory language, if adjudicatory language is found in the opinion which is made part of the record by order. . . . '*In construing a decree the intent of the court granting it will be looked to, and provisions may accordingly be sometimes implied. The decree will be construed and restricted in accordance with the pleadings and even with reference to other parts of the record.*'" (emphasis added) (quoting *Beecher v. Foster*, 66 S.E. 643, 645 (W. Va. 1909))). In other words, the *omission* of any explicit language imposing the gang-related prohibitions as "special conditions" of the court does not inherently create a *conflict* between the written order and the record, as Watts argues on appeal. Instead, the order can be read in concert with the record to include such provisions.

The gang-related provisions at issue here were originally imposed only by the probation officer, pursuant to her authority as such. However, after Watts's first violation, the trial court thereafter orally adopted those provisions. The court stated that, going forward, those same provisions were now "part and parcel" of the trial court's own probation revocation order. The trial court then memorialized this oral ruling in its written order, by stating that Watts would be placed on probation "under the same terms and conditions as previously ordered" and Watts "*must comply with all the rules and requirements, set by the probation officer.*" (Emphasis added).

This language is sufficient, given the discretion afforded to trial courts in this regard, to support the trial court's conclusion that the September 2021 written order contained the gang-related prohibitions at issue here. The trial court did not purport to rely solely on the oral

statements made at the September 8, 2021 hearing, but instead simply referenced those statements in interpreting the words of the *written* order.[18]  In doing so, the trial court found a *textual anchor* in the written order, namely, that: (1) the written order stated that Watts was placed on supervised probation "under the same terms and conditions as previously ordered," and (2) "[t]he defendant must comply with all the rules and requirements set by the probation officer."  The trial court interpreted these express mandates as containing the oral pronouncements made by Judge Sandwich.[19]  The trial court's interpretation falls squarely within the deference given to trial courts to interpret their own orders, and does not go beyond the bounds of reasonability, as a reasonable jurist could interpret the words "all the rules and

---

[18] To the extent that the concurrence claims that "nothing in the transcript of the revocation hearing shows that the trial court interpreted *that language* as incorporating the special condition," the record belies this contention.

[19] We note that the record makes clear that the trial court acknowledged the apparent tension between the oral pronouncement made from the bench on September 8, 2021, and the subsequent written order entered on September 14, 2021.  During the July 2022 hearing, the trial court alluded to this tension when it stated that "[i]t's an order about the court date September 8th . . . that was signed on September 14th . . . ."  Further, the trial court expressly stated that it was interpreting the September 14, 2021 written order as containing the substance of the oral pronouncement:

> He has violated the oral order . . . that Judge Sandwich intended to enter.  He has violated the order, the *written order that was entered because it says he is supposed to follow all instructions of probation, and that included special gang instructions.*
>
>     . . . .
>
> [S]o the record is clear I am ruling that—I am effectively ruling two things. . . .  I am ruling that the oral condition set forth by Judge Sandwich was violated.  I am also finding that *the written order was violated because it requires him to follow the terms of probation.  And that his violation, and therefore his violation of the special instructions for confirmed gang members is not a technical violation as set forth in the statute.*

(Emphases added).

requirements set by the probation officer" to necessarily include the gang-related provisions that

the probation officer had imposed during Watts's initial period of probation.[20]

For these reasons, we dissent in part and concur in part.

---

[20] In coming to this conclusion, we would note several important caveats that are specific to this case. First, the facts of this case are unique, in that the trial court expressly adopted the gang-related prohibition as a special condition at the hearing. Therefore, there was no question of notice to the defendant. On appeal, counsel for Watts admitted as much during oral argument. Second, though the language contained in the written order is "boilerplate," the unique set of facts and circumstances *in this case* support the trial court's interpretation of that general language to contain the specific gang-related prohibitions enunciated by the trial court from the bench. Importantly, our holding today is not an invitation for the Commonwealth to utilize the same or similar boilerplate language as a broad "catch-all" provision in future cases in an effort to conjure special conditions cherry-picked from different portions of the record. Third, we would reiterate that this interpretation does not alter or impinge upon the principles set out in *Delaune v. Commonwealth*, 76 Va. App. 372, 382-83 (2023), that: (1) the "General Assembly specifically defined 'technical violation' to include any 'violation based on' [the] specified conduct" contained in Code § 19.2-306.1(A); (2) determining whether a violation is technical in nature requires us to consider whether "the violation conduct matches the conduct listed in Code § 19.2-306.1(A)"; (3) Code § 19.2-306.1(A) "focuses on the underlying violation conduct itself, not the particular language or label a trial court may have used in imposing a condition of probation"; and (4) the trial court cannot arrogate to itself the power to transform any conduct listed in Code § 19.2-306.1(A) from a technical violation into its own special condition. Here, the trial court has not transformed the conduct contained in subsection (v) of the statute into its own special condition. Rather, Watts's strained construction of the statute attempts to transform the trial court's special condition regarding contact with gang affiliates into the probation officer's instruction.

## VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **23rd** *day of* **April, 2024**.

Rasheem Watts,                                                                                          Appellant,

 against                    Record No. 1132-22-1
                           Circuit Court Nos. CR16000355-04 and CR16000356-02

Commonwealth of Virginia,                                                                   Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On April 2, 2024, the appellee, by the Attorney General of Virginia, filed a petition requesting that the Court set aside the judgment rendered on March 19, 2024, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

By:  *original order signed by a deputy clerk of the*
     *Court of Appeals of Virginia at the direction*
     *of the Court*

Deputy Clerk

Present:   Judges Fulton, Friedman and Chaney
Argued at Norfolk, Virginia

RASHEEM WATTS

                                           MEMORANDUM OPINION* BY
v.        Record No. 1132-22-1           JUDGE VERNIDA R. CHANEY
                                             MARCH 19, 2024
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
L. Wayne Farmer, Judge

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on briefs), for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Rasheem Watts appeals two orders of the Circuit Court of the City of Suffolk revoking

his probation and suspended sentences on convictions for malicious wounding and firearm

possession as a convicted felon.  Watts's probation violations included his failure to follow the

probation officer's "special instructions" for gang members.  The circuit court sentenced Watts

to active incarceration for three years for violating his probation on the malicious wounding

conviction but did not impose a sentence of active incarceration for violating his probation on the

firearm conviction.

Watts contends that the circuit court erred in ruling that his failure to follow the probation

officer's "special instructions" for gang members was not a technical violation of probation

under Code § 19.2-306.1.  Watts also contends that the circuit court erred in failing to sentence

him within the statutory sentencing limits for the technical violation of his probation on the

_____

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

underlying malicious wounding conviction.  Upon finding that the circuit court's written sentencing orders did not impose the probation officer's special gang-related instructions as conditions of Watts's probation, this Court holds that the circuit court erred in ruling that Watts's failure to follow these "special instructions" was *not* a technical violation of probation under Code § 19.2-306.1.  For the following reasons, this Court reverses the circuit court's judgment, vacates the sentence in Circuit Court Case No. CR16000356-02, and remands for resentencing consistent with this opinion and in accordance with Code § 19.2-306.1(C).

BACKGROUND

*A. Prior Proceedings*

1. Original Conviction and Sentencing

In May 2016, the circuit court convicted Watts of malicious wounding and firearm possession by a convicted felon.  On the malicious wounding conviction, the court sentenced Watts to incarceration for six years with four years and six months suspended, conditioned on five years of supervised probation.  On the firearm conviction, the court sentenced Watts to incarceration for five years with three years suspended.  The court conditioned both sentences on five years of supervised probation.  The sentencing orders also provided, as a condition of the suspended sentences and probation, that "[t]he defendant shall comply with all the rules and requirements set by the probation officer. . . .  The defendant shall have no contact with the victim, [E.W.], or his family members."

2. Watts's First Probation Revocation

At a probation violation hearing on September 8, 2021, the circuit court found Watts in violation of the terms and conditions of his probation and revoked Watts's probation and suspended sentences.  The revocation sentencing orders, dated September 14, 2021 (September 2021 revocation sentencing orders), do not identify the probation violations that resulted in the

- 2 -

revocation of Watts's probation, and do not record whether the probation violations were technical or non-technical violations under Code § 19.2-306.1.

The court found Watts in violation of his probation and revoked his suspended sentences. On the malicious wounding conviction, the circuit court imposed the previously suspended sentence and re-suspended four years and six months. On the firearm conviction, the circuit court imposed the previously suspended sentence and re-suspended two years and six months. On both sentences, the court conditioned the suspended sentences on supervised probation for five years "under the same terms and conditions as previously ordered." The September 2021 revocation sentencing orders further provided, as a condition of the suspended sentences and probation, that "[t]he defendant must comply with all the rules and requirements set by the probation officer. Probation may include substance abuse counseling and/or testing as deemed necessary by the Probation Officer."

*B. Watts's Second Probation Revocation*

1. The Special Probation Instructions for Gang Members

After Watts served his first probation revocation sentence, his supervised probation began on January 5, 2022. On January 18, 2022, at the direction of his probation officer, Watts signed a form with the heading "Special Instructions—Confirmed Gang/STG Members." (R. 72, 228). The form identified Watts as a member of "Rollin 40's Gang/STG" and instructed Watts as follows:

> You have been placed on Supervision by the Virginia Parole Board and/or the Circuit Court. *Pursuant to Condition 6* of your Conditions of Supervision, having been confirmed as a gang/STG member, *you are now being directed to comply with the following instruction(s) as a requirement of your probation*.

(R. 228) (emphasis added). Watts's signature at the bottom of the form follows a list of "special instructions" and a statement "acknowlededg[ing] receipt of the instruction(s) and agree[ing] to

- 3 -

comply with the instruction(s)." Watts's probation officer, Special Probation Officer Kathy Dunlow (SPO Dunlow), also signed the form.

2. The May 2022 Probation Violation Report

On May 17, 2022, SPO Dunlow filed a major violation report (May 2022 violation report) alleging that Watts had committed a second technical violation of probation. As the circuit court noted at the outset of the probation violation hearing in July 2022, the May 2022 violation report alleged that Watts (1) violated Probation Condition 4—requiring Watts to report to probation "within three working days of [his] release from incarceration, and as otherwise instructed thereafter"—and (2) violated Probation Condition 6—requiring Watts to "follow the Probation and Parole Officer's instructions and . . . be truthful, cooperative, and report as instructed."

The May 2022 violation report specifically alleged that Watts violated Probation Condition 4 by failing to report for three scheduled appointments with his probation officer, and violated Probation Condition 6 by failing to follow two of the probation officer's special instructions for gang members. Watts allegedly failed to follow his probation officer's special instructions to (a) "not associate or communicate with any known gang/STG members or be in the presence of where they are known to associate" and (b) "not wear, display, use, or possess any insignias, emblems, badges, buttons, caps, hats, jackets, shoes, flags, scarves, bandanas, shirts, or other articles of clothing that are evidence of gang/[street gang] membership or affiliation." Watts allegedly had repeated phone contact with multiple incarcerated gang members and posted on social media writings, photos, and a video showing his gang involvement.

- 4 -

3. The July 2022 Probation Violation Hearing

On July 8, 2022, the circuit court held a hearing on the probation violations alleged in the May 2022 violation report. At the outset of the hearing, the circuit court noted that the May 2022 violation report alleged violations of Probation Condition 4—failure to report to probation as instructed—and Probation Condition 6—failure to follow the probation officer's instructions and to be truthful and cooperative. The circuit court further noted that it was Watts's second alleged probation violation. No violation reports related to the prior probation revocation were introduced and admitted into evidence. The circuit court read into the record a portion of its prior September 2021 oral ruling:

> I also specifically incorporate as a special condition of your probation all the gang-related prohibitions that were in previous violation on your previous order that probation and parole puts on you. And so there's no confusion this is a special condition of probation. All those conditions that they put on you are going to be part and parcel of the order as a special condition of probation.

R. 170.[1] However, this oral ruling was not included in the written order.

Watts did not contest the alleged probation violations or the evidence set forth in the May 2022 violation report. By counsel, Watts stipulated to his commission of the alleged violations of Probation Conditions 4 and 6 and noted that the alleged violations were not special conditions but were technical violations under Code § 19.2-306.1. The circuit court responded, "Correct." (R. 169). Based on Watts's stipulations and the contents of the May 2022 violation report, the circuit court found Watts in violation of the terms and conditions of probation.

The circuit court then stated that the question regarding sentencing was whether the circuit court's prior oral ruling made the "gang-related prohibitions" "part and parcel of the order

---

[1] Judge Robert H. Sandwich, Jr. pronounced this bench ruling..

as a special condition of probation." (R. 169-70). The "Special Instructions" for gang members signed by Watts was admitted as Commonwealth's Exhibit 1.

SPO Dunlow testified that the probation revocation sentencing guidelines she initially prepared and submitted identified Watts's probation violation as a second technical violation. SPO Dunlow further testified that she had determined it was a second technical violation based on her review of the prior written revocation sentencing order, which did not order any gang-related conditions. SPO Dunlow also testified that the original sentencing order did not include any gang-related conditions on Watts's probation. SPO Dunlow acknowledged that she gave Watts the special instructions for gang members pursuant to Condition 6 of the conditions of supervision. (R. 178).

The circuit court stated that it reviewed the September 2021 revocation sentencing order and found no use of the phrase "special conditions" and no "gang conditions" in the order. (R. 191-92). The circuit court opined, "I don't think it has to be in the order." (R. 193). The circuit court stated its finding that Watts violated a "special condition of his suspended sentence."

The circuit court further stated that it was exercising its authority to check the box on the sentencing guidelines form for violating special gang member conditions. The circuit court pronounced, "[T]herefore, the fourteen-day limit does not apply. So I do find that he has violated the special conditions."

The circuit court also pronounced that Watts "has violated the oral order that . . . [the circuit court] intended to enter." Additionally, the circuit court found that Watts "violated the order, the written order that was entered because it says he is supposed to follow all instructions of probation, and that included special gang instructions." Based on these findings, the circuit

court concluded that "the appropriate guidelines are the ones that call for zero to six months of active time."

The circuit court revoked Watts's four-year suspended sentence and imposed a sentence of incarceration for four years, with one year suspended. This appeal followed.

Watts contends that the circuit court erred in (1) ruling that his probation violations for failing to follow the probation officer's "special instructions" for gang members were not technical violations under Code § 19.2-306.1 and (2) failing to sentence him within the sentencing limits under Code § 19.2-306.1 for a technical violation of his probation on the underlying malicious wounding conviction.

On appellate review of the circuit court's revocation of a defendant's probation and suspended sentence, "[t]he evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013). "[T]he trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Id.* (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). A "[circuit] court by definition abuses its discretion when it makes an error of law." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (alteration in original). "To the extent that appellant's assignment of error raises a question of statutory interpretation, that question is reviewed *de novo* on appeal." *Jacobs*, 61 Va. App. at 535. But we give deference to the circuit court's interpretation of its own orders, if reasonable. *See Hodgins v. Commonwealth*, 61 Va. App. 102, 108 (2012); *Roe v. Commonwealth*, 271 Va. 453, 457-58 (2006). "We apply an abuse of discretion standard in determining whether the circuit court's interpretation of its order is reasonable." *Roe*, 271 Va. at 458.

- 7 -

I. The circuit court's prior oral ruling—not incorporated in the written sentencing orders—imposed no conditions of probation.

The circuit court erred in ruling that Watts's probation violation was a non-technical violation under Code § 19.2-306.1 upon finding that Watts violated a "special condition" of probation imposed by the court's prior oral ruling. At the July 2022 probation violation hearing, the circuit court found Watts in violation of his supervised probation upon Watts's stipulation that (1) he failed to report as instructed to three scheduled appointments with his probation officer and (2) he failed to follow his probation officer's instructions to (a) refrain from contact with gang members and (b) refrain from wearing, displaying, using, or possessing clothing or other objects that show gang membership or affiliation. Watts also stipulated that he signed a written form listing special probation instructions for gang members, which included the instructions that he allegedly and admittedly failed to follow.[2]

In deciding whether Watts's probation violations were technical violations subject to the sentencing limits under Code § 19.2-306.1, the circuit court examined the September 2021 revocation sentencing orders to determine whether the conditions of Watts's suspended sentences and probation included "special conditions" related to Watts's probation violations. The circuit court found that the written revocation sentencing orders did not impose any gang-related probation conditions.

Although the September 2021 revocation sentencing orders did not impose any gang-related conditions of probation, the circuit court ruled that it imposed special gang-related probation conditions through its oral ruling at Watts's first probation revocation hearing. Based on the circuit court's prior oral ruling and the circuit court's finding that the gang-related

---

[2] This revocation hearing also alleged other, undisputedly technical violations. But Code § 19.2-306.1 explains that multiple technical violations count as a single violation when adjudicated in the same hearing. Thus, we focus only on determining whether the gang-related conditions imposed a technical probation requirement.

- 8 -

prohibitions were "special conditions" of probation, the circuit court concluded that Watts's probation violation was not a technical violation under Code § 19.2-306.1.

The circuit court erred in ruling that its oral ruling at Watts's first revocation hearing imposed gang-related probation conditions on Watts. "[I]t is the firmly established law of this Commonwealth that a trial court speaks only through its written orders." *Walton v. Commonwealth*, 256 Va. 85, 94 (1998) (quoting *Davis v. Mullins*, 251 Va. 141, 148 (1996) (applying the principle in a capital murder case in which the trial court's statement from the bench conflicted with the sentencing order)). "When a court's statements from the bench conflict with its written order, the order controls." *Anonymous B v. Anonymous C*, 51 Va. App. 657, 672 (2008). Given that the September 2021 revocation written sentencing orders do not include any probation conditions requiring Watts to refrain from gang involvement, this Court finds that the circuit court did not order Watts's compliance with the "special instructions" for gang members as conditions of his probation and suspended sentence.

The Commonwealth contends that the circuit court "explicitly incorporated the specialized gang conditions as a special condition of Watts's probation." Appellee's Br. 10-11. In support of this contention, the Commonwealth references the court's pronouncements in the transcript of Watts's first revocation proceeding, not the written revocation sentencing orders entered after that hearing. As the circuit court found and the record shows, the written revocation sentencing orders did not include the gang-related special instructions as conditions of Watts's probation.

The Commonwealth argues that in keeping with the obligation of appellate courts to defer to the circuit court's interpretation of its orders, this Court should treat the circuit court's oral bench ruling at Watts's prior probation revocation hearing as the court's order imposing the conditions of Watts's probation. *See Roe*, 271 Va. at 458 (holding that Virginia appellate courts

- 9 -

accord deference to a circuit court's reasonable interpretation of its own orders). However, the circuit court did not interpret its written sentencing orders to include the gang-related probation conditions at issue. Rather, the circuit court treated its oral ruling as an enforceable order, notwithstanding its determination that the written sentencing orders did not expressly impose the gang-related probation conditions. *See Yazdani v. Sazegar*, 76 Va. App. 261, 271 (2022) ("In reviewing an agreement for evidence of waiver, '[c]ourts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein.'" (quoting *Southerland v. Estate of Southerland*, 249 Va. 584, 590 (1995))).

The Commonwealth argues that Virginia law merely *presumes* that a trial court speaks only through its written orders and that this presumption was rebutted here. *See McGinnis v. McGinnis*, 69 Va. App. 572, 578 (2018) ("Virginia law recognizes a rebuttable presumption that 'trial courts speak only through their written orders.'" (quoting *Dir. of the Dep't of Corr. v. Kozich*, 290 Va. 502, 511 (2015))). The Commonwealth contends that the transcript of Watts's prior revocation hearing shows that the circuit court intended to impose the gang-related special instructions as conditions of Watts's probation.

But "[t]he subjective intentions of a judge upon entering a written order cannot change its character or legal efficacy." *Kozich*, 290 Va. at 511. Therefore, the circuit court's oral announcement of incorporating the gang-related conditions does not overcome the presumption that circuit courts speak only through their written orders. The presumption is typically rebutted by a record showing that a written order contains a clerical mistake or error due to oversight or inadvertent omission. Code § 8.01-428(B). Those corrections can be made only if they are supported by the record. *Sch. Bd. of Lynchburg v. Caudill Rowlett Scott, Inc.*, 237 Va. 550, 555 (1989), *superseded by statute on other grounds as recognized in Hill v. Hill*, 2021 Va. App. LEXIS 208, *7 n.2 (Nov. 16, 2021) ("In the aftermath of the *School of Board of*

*Lynchburg* case, the General Assembly enacted Code § 8.01-428(C), and by its express terms permitted a 'circuit court' to extend the deadline to note an 'appeal therefrom' under certain circumstances.").

*This* record—where the circuit court had multiple opportunities to issue written, gang-related conditions, but did not do so—does not show mere oversight or inadvertence under Code § 8.01-428(B). Moreover, the Commonwealth was free to move the circuit court to clarify the sentencing order if it did not reflect the court's intent. It did not do so. *See Stamper v. Commonwealth*, 220 Va. 260, 280 (1979) ("In the absence of objection, we deem the order of the trial court to contain an accurate statement of what transpired."). Upon review of the prior revocation sentencing orders, this Court concludes that the record supports the circuit court's finding that the probation conditions imposed in these sentencing orders do not include the "special instructions" for gang members.

The presumption that a circuit court speaks only through its written orders can be rebutted by a record showing that a written order contains a clerical mistake or error due to oversight or inadvertent omission. Code § 8.01-428(B) (authorizing circuit courts to correct "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission"). "The court has the power to correct the record under Code § 8.01-428(B) only 'when the record clearly supports such corrections.'" *School Bd. of Lynchburg*, 237 Va. at 555 (quoting *Cutshaw v. Cutshaw*, 220 Va. 638, 641 (1979)). After notice to the parties, the circuit court is authorized to make such corrections at any time, with restrictions during the pendency of an appeal.[3] *See* Code § 8.01-428(B). The circuit court may make such corrections "on its own initiative or upon the motion of any party." *Id.*

---

[3] "During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court." Code § 8.01-428(B).

- 11 -

The record indicates the omission of the gang-related probation conditions from the prior revocation sentencing orders may have been deliberate and based on a mistake of law, rather than a clerical mistake or error from oversight or inadvertent omission. The circuit court ruled, and the Commonwealth now contends, that by expressly requiring Watts to "comply with all the rules and requirements set by the probation officer," the prior revocation sentencing orders imposed a "special condition" of probation that rendered any failure to follow the probation officer's instructions a non-technical violation of probation. On this assumption, it would have been considered unnecessary to expressly incorporate the gang-related probation conditions pronounced in the oral bench ruling. Under such circumstances, the presumption that the circuit court "speaks" the imposed probation conditions only through its written sentencing orders would not be rebutted by the transcript of the oral pronouncement of the gang-related probation conditions. Contrary to the circuit court's ruling and the Commonwealth's contention, the prior revocation sentencing orders did not impose a non-technical "special condition" of probation by expressly conditioning Watts's probation on the requirement to "comply with all the rules and requirements set by the probation officer."

Our dissenting colleague argues that the circuit court can interpret the written order to include gang-related conditions as substantive conditions, because the circuit court's oral pronouncement makes that interpretation a part of the record. *See Post* at 22. Respectfully, we disagree. The dissent cites a Supreme Court of Appeals of West Virginia case to support this proposition that a circuit court may, through interpretation, inject new meaning into a written order. *Id.* (citing *State ex rel. Moore v. Munchmeyer*, 197 S.E.2d 648, 653 (W. Va. 1973) (quoting *Beecher v. Foster*, 66 S.E. 643, 645 (W. Va. 1909))). But that proposition does not find any support in Virginia law. To the contrary, our Court has held "when the trier of fact issues an opinion *at the time its decree is entered*, the opinion is instructive as to the decree's reasoning

- 12 -

and, by extension, its effect." *Rusty's Welding Serv., Inc. v. Gibson*, 29 Va. App. 119, 130 (1999) (emphasis added) (citing, *e.g.*, *Munchmeyer*, 197 S.E.2d at 653). The order here does not mention gang-related probation conditions. Rather, the trial court injected an absent condition into the written order long after the fact, which is akin to rewriting the order, not interpreting the order.

II. The circuit court erred in ruling that Watts's probation violation is a non-technical violation based on its finding that Watts violated a "special condition" of probation.

A. *The circuit court found that Watts violated a "special condition" of probation.*

The circuit court concluded that Watts violated a "special condition" of probation upon considering the probation sentencing guidelines form and the form listing the probation officer's "special instructions" for gang members. The circuit court noted that the probation conditions listed on the sentencing guidelines form include "Special Gang Member Conditions/Instructions." The court ruled that the box next to "Special Gang Member Conditions/Instructions" should be checked because Watts violated his probation officer's "special instructions" for gang members. Upon finding that Watts thereby violated a "special condition" of probation, the circuit court ruled that the 14-day statutory maximum sentence for second technical probation violations did not apply. *See* Code § 19.2-306.1(C).

The circuit court's finding that Watts violated a "special condition" of probation is also based on the court's consideration of the probation conditions stated in the September 2021 revocation sentencing order. Although the sentencing order does not include any gang-related probation conditions, the circuit court noted that the order provides, as a condition of the suspended sentence and probation, that "[t]he defendant must comply with all the rules and requirements set by the probation officer." The circuit court ruled that because the September 2021 revocation sentencing order conditions Watts's probation on his compliance

with the probation officer's instructions, Watts violated a "special condition" of probation by violating the probation officer's instructions to refrain from gang involvement.

B. *A violation of a "special condition" of probation is not necessarily a non-technical violation under Code § 19.2-306.1.*

The circuit court erroneously ruled that because Watts violated a "special condition" of probation, his probation violation was a non-technical violation under Code § 19.2-306.1. Upon finding that Watts violated a "special condition" of probation by violating the probation officer's "special instructions" for gang members, the circuit court ruled that its sentencing power was not limited by the statutory sentencing limits for first and second technical probation violations. *See* Code § 19.2-306.1(C). Upon finding that Watts violated a "special condition" of probation under the September 2021 revocation sentencing orders, the circuit court ruled that "therefore[,] his violation of the special instructions for confirmed gang members is not a technical violation as set forth in the statute."

After the circuit court sentenced Watts for a non-technical probation violation, this Court issued its opinion in *Delaune*, rejecting the contention that a violation of any "special condition" of probation is a non-technical violation for purposes of sentencing under Code § 19.2-306.1. *See Delaune v. Commonwealth*, 76 Va. App. 372, 382-83 (2023), *aff'd*, ___ Va. ___ (Dec. 14, 2023). As explained in *Delaune*, the sentencing limits for first and second technical probation violations apply if the violation is based on conduct defined as a "technical violation" in the ten technical violations enumerated in Code § 19.2-306.1(A). *Id.*

In *Delaune*, the defendant's suspended sentence was revoked based, in part, on the defendant's use of controlled substances. The sentencing order that placed Delaune on supervised probation required her to "be drug-free" as a condition of the probation and suspended sentence. The trial court ruled that Delaune's probation violation was a special, non-technical violation because her drug use violated a special condition of probation imposed in the sentencing order. In

- 14 -

reversing this ruling, this Court held that "[w]hen the violation conduct matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a "technical violation." *Delaune*, 76 Va. App. at 383. Delaune's drug use was a technical violation because clause (vii) of Code § 19.2-306.1(A) defines "technical violation" to include a probationer's failure to "refrain from the use, possession, or distribution of controlled substances." Therefore, *whether or not a condition of probation is labeled a "special condition" or included in the sentencing order as a condition of the suspended sentence*, a violation of the condition is a technical violation under Code § 19.2-306.1 if the violation is based on the probationer's failure to comply with any of the ten requirements set forth in Code § 19.2-306.1(A).

C. *Watts's probation violation is a technical violation under Code § 19.2-306.1.*

Both of Watts's probation violations are technical violations under Code § 19.2-306.1. Watts's failure to report as instructed for three scheduled meetings with his probation officer is a technical violation because clause (v) of Code § 19.2-306.1(A) defines "technical violation" as "a violation based on the probationer's failure to . . . report as instructed" to the probation officer. *See* Code § 19.2-306.1(A). Watts's failure to follow his probation officer's instructions to refrain from gang involvement is a technical violation because clause (v) of Code § 19.2-306.1(A) also defines "technical violation" as "a violation based on the probationer's failure to . . . follow the instructions of the probation officer." Because Watts's violation conduct "matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a 'technical violation.'" *Delaune*, 76 Va. App. at 383.

The label "special instructions" on the probation officer's gang-related instructions is not relevant in determining whether the failure to follow these instructions is a technical violation under Code § 19.2-306.1. In construing this statute, "our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Blake v. Commonwealth*,

- 15 -

288 Va. 375, 381 (2014) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)).  In defining a "technical violation" of probation to include a probationer's "failure to . . . follow the instructions of the probation officer," the General Assembly made no exception for instructions labeled "special instructions."  *See* Code § 19.2-306.1(A).  "Appellate courts 'must assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute.'"  *Henthorne v. Commonwealth*, 76 Va. App. 60, 66 (2022) (quoting *Jordan v. Commonwealth*, 295 Va. 70, 75 (2018)).  Thus, Code § 19.2-306.1(A)(v) cannot reasonably be construed to include an exception for a probationer's failure to follow the "special instructions" of the probation officer.  We decline to read an exception for "special instructions" into Code § 19.2-306.1(A)(v).  *See Henthorne*, 76 Va. App. at 67 ("[C]ourts cannot, by judicial interpretation, add language to a statute that the General Assembly did not include in its enactment." (alteration in original) (quoting *Young v. Commonwealth*, 273 Va. 528, 534 (2007))).  Therefore, Watts's failure to follow his probation officer's instructions to refrain from gang involvement is a technical probation violation under Code § 19.2-306.1.

The Commonwealth argues that Watts's probation violation was not a technical violation because a probationer's failure to comply with "special gang instructions" does not match any conduct identified as a technical violation in Code § 19.2-306.1(A).  But under the description "*failure to follow the instructions of the probation officer* to comply with 'special gang instructions,'" Watts's violation conduct does match conduct statutorily defined as a technical violation in Code § 19.2-306.1(A).  Thus, to determine whether Watts's probation violation is a technical violation, we must first determine the appropriate description of Watts's violation conduct.

To determine whether, for purposes of Code § 19.2-306.1, a probationer's violation conduct is appropriately described as a failure to follow the instructions of the probation officer, we must determine whether the probation officer's instructions relate to a court-ordered condition of the

- 16 -

probationer's suspended sentence and probation. When a probationer fails to comply with a court-ordered probation condition to do or refrain from doing specified conduct that "does not fall within any of the ten enumerated technical violations under Code § 19.2-306.1(A)," the violation conduct is a "*failure to follow* the *instructions of the court*." *See Burford v. Commonwealth*, 78 Va. App. 170, 183-84 (2023) (emphasis added). As this Court held in *Burford*, such a probation violation is a non-technical violation under Code § 19.2-306.1(A). *Id.* at 183. Therefore, under circumstances where a probationer fails to follow a probation officer's instructions to comply with such a court-ordered condition of probation, the probationer's violation conduct is not properly described as "a failure to follow the instructions of the probation officer" for purposes of Code § 19.2-306.1.

The Commonwealth describes Watts's violation conduct as a failure to comply with "special gang instructions" imposed by the circuit court. However, as the record shows and the circuit court acknowledged, the circuit court's prior revocation sentencing order does not include any gang-related instructions as conditions of Watts's suspended sentence and probation. The Commonwealth asks this Court to give effect to an oral ruling that is not incorporated in the circuit court's written order. This Court cannot accept the Commonwealth's invitation to depart from binding precedent holding that "a trial court speaks only through its written orders." *Walton*, 256 Va. at 94 (quoting *Davis*, 251 Va. at 148).

The circuit court's prior revocation sentencing order did not impose any condition on Watt's suspended sentence and probation incorporating the gang-related instructions signed by Watts at the direction of his probation officer. Therefore, *but for the probation officer's instructions*, the terms of Watts's probation would not require his compliance with the special instructions for gang members. Under these circumstances, Watts's violation conduct is properly

described as a "failure to follow the instructions of the probation officer," and is a technical probation violation under Code § 19.2-306.1.[4]

>    III. The circuit court erred in failing to sentence Watts within the statutory sentencing limits for a second technical violation of probation.

The probation violations at issue in this appeal collectively constitute a single technical violation of probation. Since Code § 19.2-306.1(A) provides that multiple technical violations considered at the same revocation hearing constitute a single probation violation for purposes of sentencing under Code § 19.2-306.1, Watts's multiple technical violations count as a single technical violation. *See* Code § 19.2-306.1(A).

Since Watts had only one prior probation revocation, in September 2021, the technical violation at issue here is, at most, Watts's second technical violation. Whether Watts's technical probation violation is a first or second technical violation depends on whether Watts's prior revocation was for a technical violation of probation. *See Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (holding that Code § 19.2-306.1 requires evidence of two prior technical violations before a defendant may be sentenced for a third technical violation). Here, the prior revocation sentencing order does not identify the probation violations that resulted in the probation revocation and does not state whether the probation violations were technical or non-technical. Nor did the Commonwealth introduce in evidence the violation reports related to the prior probation revocations. But Watts's probation officer testified, without objection, that the sentencing guidelines she initially submitted were for a second technical violation. Moreover, Watts argued to the circuit court that if the court concluded that his probation violation was a technical violation, the

---

[4] This holding is not inconsistent with this Court's holding in *Thomas v. Commonwealth*, 77 Va. App. 613, 625 n.10 (2023) ("[N]either party suggests that subsection (A)(v) [of Code § 19.2-306.1] controls the outcome of this appeal, and we are conscious of the requirement to decide cases on the best and narrowest ground. . . . Therefore, we do not address whether the appellant's alcohol and drug violations were technical ones under subsection (A)(v) or whether a properly presented claim based on that subsection would have resulted in a different outcome.").

14-day maximum sentence for a second technical violation would apply. Because the record supports a finding that Watts's prior probation violation was a technical violation, we conclude that the circuit court should have sentenced Watts for a second technical violation of probation.

The circuit court sentenced Watts to a period of active incarceration that exceeds the statutory maximum sentence for a second technical violation of probation. Under Code § 19.2-306.1(C), there is "a presumption against imposing a sentence of a term of active incarceration for any second technical violation" of probation. Code § 19.2-306.1(C). "However, if the court finds, by a preponderance of the evidence, that the defendant committed a second technical violation and he cannot be safely diverted from active incarceration through less restrictive means, the court may impose *not more than 14 days of active incarceration* for a second technical violation." *Id.* The circuit court exceeded this limit by imposing a sentence of active incarceration for three years. Because the circuit court unlawfully imposed a sentence of active incarceration that exceeds the statutory maximum sentence for a second technical probation violation, Watts must, therefore, be resentenced.

CONCLUSION

The circuit court erred in ruling that Watts's failure to follow the probation officer's "special instructions" for gang members was not a technical violation of probation under Code § 19.2-306.1. The circuit court further erred in imposing a sentence of active incarceration that exceeded the statutory maximum sentence for a second technical violation of probation under Code § 19.2-306.1(C). Therefore, this Court reverses the circuit court's judgment, vacates the revocation sentencing order in Circuit Court Case No. CR16000356-02, and remands for resentencing consistent with this opinion and in accordance with Code § 19.2-306.1(C).

*Reversed, vacated, and remanded.*

Fulton, J., dissenting.

This case presents an occasion to clarify the contours of Code §§ 19.2-306 and -306.1. Watts argues—and the majority agrees—that the gang-related prohibition imposed upon him is a technical violation under Code § 19.2-306.1(A)(v), which requires that he "follow the instructions of the probation officer, be truthful and cooperative, and report as instructed." In effect, Watts argues that, despite its later adoption by the trial court, because the "Special Instructions" form he signed was given to him by the probation officer, that condition was an "instruction[] of the probation officer" under Code § 19.2-306.1(A)(v)—which would be merely a technical violation. Watts's construction turns the statute on its head.

Since I disagree with Watts and the majority's assertion that the trial court abused its discretion in interpreting its own order, I respectfully dissent from the majority's decision to reverse Watts's probation revocation. Instead, I would affirm Watts's sentence on the ground that the September 14, 2021 probation revocation order contained sufficient language as to incorporate the oral pronouncements made by the trial court[5] during the September 8, 2021 revocation hearing.

As pertinent here, the trial court saw fit to incorporate the gang-related provisions initially imposed by Watts's probation officer into the trial court's own probation revocation order. Specifically, the trial court imposed as a special condition of Watts's probation "all the gang related prohibitions" that probation and parole had earlier placed on Watts. Thereafter, upon his release, Watts was again placed on probation and once again, his probation officer directed Watts to refrain from contacting his former gang associates or engaging in any gang

---

[5] Judge Sandwich presided over the September 8, 2021, revocation hearing. Judge Farmer presided over the July 8, 2022 hearing, and ultimately issued the order revoking Watts's probation and imposing the active sentence.

activity. Nevertheless, Watts yet again violated these gang-related conditions, and on May 17, 2022, his probation officer filed a major violation report.

The issue presented in this case is whether the trial court properly interpreted the written orders issued following the first revocation hearing as incorporating the gang member instructions as a special condition, despite the absence of any explicit language in the written orders. Both parties, as well as the majority, concede that a trial court may interpret its own order and that this interpretation must receive deference on appeal. *Hodgins v. Commonwealth*, 61 Va. App. 102, 108 (2012). Watts argues, however, that courts speak only through their written orders and that the trial court's interpretation exceeds the "four corners" of the written orders. *Cf. McGinnis v. McGinnis*, 69 Va. App. 572, 578 (2018); *Smoot v. Commonwealth*, 37 Va. App. 495, 500 (2002) ("Although trial courts have discretion to interpret their own orders, that discretion must be exercised reasonably and not arbitrarily or capriciously. Furthermore, an order must be interpreted within its four corners." (citations omitted)). Further, Watts argues that there is a presumption that written orders more accurately reflect the judgment of the court than the trial transcript. *Smith v. Commonwealth*, 32 Va. App. 766, 772 (2000). However, as the Commonwealth notes, this is a "rebuttable presumption." *McGinnis*, 69 Va. App. at 578. "[A] reviewing court must read [written] orders in context." *Cellucci v. Commonwealth*, 77 Va. App. 36, 51 (2023) (en banc). This Court also has held, "in construing an order . . . that does not conflict with the transcript, a reviewing court may consider the lower court's statements from the bench to determine what construction a lower court has placed on its own order." *Anonymous B v. Anonymous C*, 51 Va. App. 657, 672 (2008).

Here, the trial court, in pronouncing the terms of Watts's probation, expressly made the gang provisions ordered by the probation officer a "special condition" of the court, stating:

> I also specifically incorporate as a special condition of your
> probation all the gang related prohibitions that were in the previous

- 21 -

violation, or your previous order that the probation and parole puts on you. *So that there's not confusion, this is a special condition of probation. All those conditions that they put on you are going to be part and parcel of the order as a special condition of probation.*

(Emphasis added).

I would find that, notwithstanding that the trial court did not expressly include any language in its written order pertaining to this "gang-related special condition," the trial court was entitled to interpret the written order to include the above-mentioned special condition. *See State ex rel. Moore v. Munchmeyer*, 197 S.E.2d 648, 653 (W. Va. 1973) ("[T]his Court will construe a judgment order as sufficient although it does not contain specific adjudicatory language, if adjudicatory language is found in the opinion which is made part of the record by order. . . . 'In construing a decree the intent of the court granting it will be looked to, and provisions may accordingly be sometimes implied. The decree will be construed and restricted in accordance with the pleadings and even with reference to other parts of the record.'" (quoting *Beecher v. Foster*, 66 S.E. 643, 645 (W. Va. 1909))). The gang-related provisions at issue here were originally imposed only by the probation officer, pursuant to her authority as such. However, after Watts's first violation, the trial court thereafter orally adopted those provisions. The court stated that, going forward, those same provisions were now "part and parcel" of the trial court's own probation revocation order. The trial court then memorialized this oral ruling in its written order, by stating that Watts would be placed on probation "under the same terms and conditions as previously ordered" and Watts "must comply with all the rules and requirements, set by the probation officer." I would hold that the trial court was within its discretion to interpret its own written order to include the substance of the oral pronouncement.

The majority makes several claims which I disagree with. First, the majority states that "[t]he circuit court found that the written revocation sentencing orders did not impose any gang-related probation conditions." The majority then goes on to conclude that, even though the

*written* order did not contain the gang-related provisions, the trial court found that the *oral* ruling was sufficient to impose these conditions. I disagree with the majority's framing of the record here, as the trial court actually determined that the written order *did* in fact contain reference to the gang-related probation provisions, albeit not expressly. The trial court did not purport to rely solely on the oral statements made at the September 8, 2021 hearing, but instead simply referenced those statements in interpreting the words of the *written* order. In doing so, the trial court found a *textual anchor* in the written order, namely, that: (1) the written order stated that Watts was placed on supervised probation "under the same terms and conditions as previously ordered" and (2) "[t]he defendant must comply with all the rules and requirements set by the probation officer." The trial court read these express mandates as containing the oral pronouncements made by Judge Sandwich. In my view, the trial court's interpretation falls squarely within the deference given to trial courts to interpret their own orders, and does not go beyond the bounds of reasonability, as a reasonable jurist could interpret the words "all the rules and requirements set by the probation officer" to include the former gang-related provisions that the probation officer had imposed during Watts's initial period of probation. Watts simply states that the order was unambiguous and thus the inclusion of the oral statements was unreasonable. But the plain meaning of "previously ordered" could include the oral ruling at the hearing combined with the prior sentencing order. Judge Sandwich clearly and definitively stated in the presence of both parties that the gang member instructions were to be special conditions of probation, thereby clarifying any ambiguity as to whether the gang-related prohibitions were special conditions. These direct statements are more than the mere "subjective intentions" of a judge when entering a written order. *Dir. of the Dep't of Corr. v. Kozich*, 290 Va. 502, 511 (2015). Given the ambiguity contained in the subsequent written order, as well as the definitiveness of Judge Sandwich's prior statements at the first revocation hearing, Watts fails to

establish why we should not defer to the trial court's interpretation of the order following the first revocation hearing, incorporating the gang member instructions as a special condition of Watts's probation.

Next, the majority acknowledges that "[t]he presumption that a circuit court speaks only through its written orders can be rebutted by a record showing that a written order contains a clerical mistake or error due to oversight or inadvertent omission." (citing Code § 8.01-428(B)). As a secondary matter, I would alternatively interpret the trial court's ruling as a recognition that the September probation revocation order contained a clerical error, by omitting express language regarding the gang provisions, but that the trial court nonetheless corrected any such omission on the record by interpreting the September orders to include those provisions. The record reveals that the Commonwealth asked the court to continue the case so as to consider the September order in light of the oral comments made to Watts and his counsel at the hearing. This indicates that the Commonwealth recognized a potential textual deficiency in the order and brought the trial court's attention to it. The fact that the trial court ultimately determined that no textual deficiency existed further supports deference to the trial court's interpretation of its own order. And moreover, should this Court determine that the text of the order in fact *does not* contain language sufficient to contain the relevant gang-related provisions, the appropriate remedy here would be to remand to the trial court for clarification as to any potential clerical error. Our Court has recently recognized that we may, on appellate review, remand the case to the trial court for clarification, should we determine that a clerical error exists. *See Greene v. City of Portsmouth*, No. 1461-22-1, slip op. at 19 (Va. Ct. App. Mar. 19, 2024) (this day decided) (recognizing that clerical errors that "cause a final decree or the court's record to fail to 'speak the truth'" should be remanded to the trial court for correction). Thus, to the extent that the

written order *is* deficient, the appropriate remedy here is not to reverse Watts's sentence, but instead to remand to the trial court for that court to determine if a clerical error exists.

Finally, the majority cites *Delaune v. Commonwealth*, 76 Va. App. 372 (2023), for the proposition that "[a] violation of a 'special condition' of probation is not necessarily a non-technical violation under Code § 19.2-306.1." While I of course agree with this general proposition, in this particular case, Watts's violation of the gang-related probation provisions *is* a special, non-technical violation because the trial court explicitly said so. The majority's interpretation places undue significance on the probation officer's role in administering probation and turns Code § 19.2-306.1 on its head.

It is the trial court, not the probation officer, that possesses the authority to specify the terms and conditions of a probationer's probation. Probation is, after all, a tool for the trial court to deploy in order to help rehabilitate an offender. *See Howell v. Commonwealth*, 274 Va. 737, 740 (2007). Watts's contrary interpretation of the statute would allow technical violation (v)—the requirement that a probationer "follow the instructions of the probation officer"—to swallow a trial court's ability to set and enforce these types of gang-related conditions as special conditions of probation. The majority's interpretation of the statute would turn any court-ordered provision into a probation officer's "instruction" any time the probation officer directed or enforced such provision. This contravenes the traditional understanding of the trial court's role in setting the terms and conditions of probation, as well as the court's specific statutory authority reflected in Code § 19.2-303, which recognizes a trial court's ability, after determining that a defendant was an active participant or member of a criminal street gang, to "place reasonable restrictions on those persons with whom the [defendant] may have contact." The trial court's order requiring Watts to comply with his probation officer's gang-related prohibitions and incorporating that prohibition as a special condition of the

- 25 -

trial court is not a mere technical violation under Code § 19.2-306.1(A)(v), but the trial court's own special condition.

In coming to this conclusion, I would note several important caveats that are specific to this case. First, the facts of this case are unique, in that the trial court expressly adopted the gang-related prohibition as a special condition at the hearing. Therefore, there was no question of notice to the defendant.[6] Next, though the language contained in the written order is "boilerplate," the unique set of facts and context in this case support the trial court's interpretation of that general language to contain the specific gang-related prohibition as the court's own special condition. I would not view this as an invitation for the Commonwealth to utilize the same or similar boilerplate language in another case as a broad "catch-all" provision to conjure other special conditions cherry-picked from different portions of a transcript. Finally, I would reiterate that my interpretation would not alter or impinge upon the principles set out in *Delaune*, that: (1) the "General Assembly specifically defined 'technical violation' to include any 'violation based on' [the] specified conduct" contained in Code § 19.2-306.1(A); (2) determining whether a violation is technical in nature requires us to consider whether "the violation conduct matches the conduct listed in Code § 19.2-306.1(A)"; (3) Code § 19.2-306.1(A) "focuses on the underlying violation conduct itself, not the particular language or label a trial court may have used in imposing a condition of probation"; and (4) the trial court cannot arrogate to itself the power to transform any conduct listed in Code § 19.2-306.1(A) from a technical violation into its own special condition. 76 Va. App. at 382-83. Here, the trial court has not transformed the conduct contained in subsection (v) of the statute into its own special condition. Rather, Watts's strained construction of the statute attempts to transform the trial

---

[6] On appeal, counsel for Watts admitted as much during oral argument.

court's special condition regarding contact with gang affiliates into the probation officer's instruction.

Code § 19.2-306.1(A) does not define "technical violations" broadly, but instead specified a limited number of types of conduct that fall within the ambit. Further, the code section expressly recognizes that certain conduct may be proscribed by the trial court by creating "special conditions" unique to the offender. And these "special conditions" may include certain conduct that would not constitute a new law violation. In an instance like here, where both the trial court and the probation officer directed a certain special condition of probation, the probation officer's concurrent direction cannot supersede the trial court's direction and transform the violation into a technical violation under Code § 19.2-306.1(A)(v). That reading of the statute would turn the traditional nature and understanding of the administration of probation on its head. If the General Assembly meant to define all "non-new law violations" as technical violations, it could have done so; but it did not. I would therefore decline to adopt such a construction of the statute.

Consequently, for all of these reasons, I would affirm Watts's probation revocation sentence, or in the alternative, remand to the trial court to determine whether a clerical error had occurred. Therefore, I respectfully dissent.